MARY E. CHAMBERS *et al.* v. THOMAS J. ANDERSON *et al.*

VENDOR AND VENDEE — *Construction of Contract — Option of Vendor.* Where, in a written agreement for the sale of land, the parties stipulate that, "in case the second party shall fail to make the payments aforesaid, and each of them, punctually, and upon the strict terms and times above limited, and likewise to perform and complete all and each of the agreements and stipulations aforesaid strictly and literally, without any failure or default, then this contract, so far as it may bind said first party, shall become utterly null and void, and all rights and interests hereby created or then existing, in favor of or derived from the first party, shall utterly cease and determine, and the rights of possession and all equitable and legal interests in the premises hereby contracted shall revert to and revest in said first party, without any declaration of forfeiture or act of reëntry, or any other act by said first party to be performed, and without any right of said second party of reclamation or compensation for moneys paid or services performed, as absolutely, fully and perfectly as if this contract had never been made," the meaning of such clauses is, that such agreement is void only at the election of the vendor or seller (the party of the first part), who can avoid them or enforce them, at his own option.

*Error from Reno District Court.*

THOMAS J. ANDERSON and W. L. Woodnutt brought their action against Mary E. and C. C. Chambers, to recover $388.50, with interest, from Mrs. Chambers, as a balance due upon the following written contract:

"This agreement, made this 23d day of August, in the year 1887, between Thomas J. Anderson and W. L. Woodnutt, of the first part, and Mrs. M. E. Chambers, of Hutchinson, county of Reno, state of Kansas, of the second part, witnesseth: That in consideration of the stipulations herein contained, and the payments to be made as hereinafter specified, the first party agrees to sell unto the second party lot 138, block 8, in Puterbaugh's addition to South Hutchinson, county of Reno, state of Kansas, as designated by the recorded map of said city, for the sum of $500, with interest at the rate of 10 per cent. per annum. Payment has been made and received of $167, and the remaining principal with the accruing interest shall be paid at the office of the first party in two payments,

at the times and in the manner following, to wit: First payment, September 18, 1887, $166.66, interest, $8.33; total, $174.99. Second payment, March 18, 1888, $166.66, interest, $16.66; total, $183.32.

"And the said party, in consideration of the said premises, hereby agrees that she will make punctual payment of the above sums, as each of the same respectively becomes due, and that she will regularly and seasonably pay all such taxes and assessments as may hereinafter become due on said premises. In case the second party, his legal representatives or assigns, shall pay the several sums of money aforesaid punctually, and at the times above limited, and shall strictly and literally perform all and singularly the agreements and stipulations aforesaid, after their true tenor and intent, strictly, then the first party will cause to be made and executed unto the said second party, her heirs and assigns, (upon request, at the office of the first party, and the surrender of this contract,) a deed, conveying said premises in fee simple, with the ordinary covenants of warranty as to incumbrance existing against said premises at the date of this contract. And it is hereby agreed and covenanted by the parties hereto, that time and punctuality are material and essential ingredients in this contract.

"And in case the second party shall fail to make the payments aforesaid, and each of them, punctually, and upon the strict terms and times above limited, and likewise to perform and complete all and each of the agreements and stipulations aforesaid strictly and literally, without any failure or default, then this contract, so far as it may bind said first party, shall become utterly null and void, and all rights and interests hereby created or then existing, in favor of or derived from the first party, shall utterly cease and determine, and the rights of possession and all equitable and legal interests in the premises hereby contracted shall revert to and revest in said first party, without any declaration of forfeiture or act of reentry, or any other act by said first party to be performed, and without any right of said second party of reclamation or compensation for moneys paid or services performed, as absolutely, fully and perfectly as if this contract had never been made.

"And said party of the first part shall have the right, immediately upon the failure of the party of the second part to comply with the stipulations of this contract, to enter upon the land aforesaid and take immediate possession thereof, to-

gether with the improvements and appurtenances thereunto belonging. And the said party of the second part covenants and agrees that she will surrender to the said party of the first part the said land and appurtenances, and no court shall relieve the party of the second part from a failure to comply strictly and literally with this contract.

"And it is further stipulated, that no assignment of the premises shall be valid unless the same shall be indorsed hereon, and that no agreements or conditions or relations between the second party and her assignee, or other person acquiring title or interest from or through her, shall preclude the first party from the right to convey the premises to said second party or her assigns, on the surrender of this agreement and the payment of the unpaid portion of the purchase money which may be due to the first party.

"In witness whereof, said parties have hereunto set their hands, the day and year above written.

     (Signed)    THOS. J. ANDERSON.
           W. L. WOODNUTT.
           M. E. CHAMBERS."

And in their petition Anderson and Woodnutt also prayed that the said contract be declared an equitable mortgage, and foreclosed; that the premises therein described be sold, and the proceeds thereof paid in satisfaction of the judgment, interest, and costs, and that plaintiffs have execution against Mrs. Chambers for any balance remaining unpaid. Before commencing the action, the plaintiffs executed and tendered to Mrs. Mary E. Chambers their warranty deed for the premises described in the written contract, and at that time demanded payment of the balance due by the terms thereof. This Mrs. Chambers refused. A demurrer was filed to the petition, alleging that it did not state facts sufficient to constitute a cause of action against the defendants, or either of them. This demurrer was overruled, and, as the defendants elected to stand thereon and declined to plead further, the court rendered judgment for the plaintiffs and against the defendant, Mrs. Mary E. Chambers, for $414, and $8.10 costs. A decree was entered declaring the judgment to be a lien upon the premises described in the contract, and ordering a sale of

the premises to pay the same, and, after the sale thereof, barring the defendants of all right, title, estate, or claim therein. The defendants objected to the judgment, and bring the case here.

*McKinstry & Wise,* for plaintiffs in error:

The only proposition in *Bohart v. Investment Co.,* 49 Kas. 94, with which we disagree is the third one laid down in the opinion, as to the construction of the contract. The authorities relied on by the court to sustain its construction are as follows: *Barrett v. Dean,* 21 Iowa, 423; *Sigler v. Wick,* 45 id. 690; *Railroad Co. v. Brickley,* 21 Kas. 275; *Land Co. v. Perry,* 23 id. 140; *Benedict v. Lynch,* 1 Johns. Ch. 369; *Blood v. Enos,* 12 Vt. 625.

After an examination of the two Iowa cases aforesaid, and also *Bradford v. Limpus,* 10 Iowa, 35, and giving a copy of the agreement in this case, counsel said:

By a careful observance of the contract above set out, the court will see that the essential parts of it are just like the case of *Bradford v. Limpus,* 10 Iowa, 35, with the exception of the condition requiring Bradford to pay back $1,200 of the $1,700 which had been advanced by Limpus. This in no wise makes the case stronger than ours, but, in our judgment, rather makes it weaker. In order to make it as strong as ours, Limpus should have forfeited the whole $1,700. If it were not the intent of the parties that the penalty for failure to comply by Mrs. Chambers should be a forfeiture of the advanced payment and the surrender of the property, why was it so particularly set down and stated? It seems to us that this sort of contract must be construed so as to allow Mrs. Chambers to pay out and take the land, if she pays promptly and according to the tenor and effect of the contract, or by failure to pay she thereby elects to forfeit the advanced payment and surrender the property.

We have no fault to find with the case of *Railroad Co. v. Brickley,* supra. We do not deny the main proposition in that case, that the parties of the first part in such contracts

have the right to insist on the forfeiture. On the contrary, we insist that they have; and that, in our contract, a failure by Mrs. Chambers to pay was an election by her to lose what she had already paid, and surrender all rights to the property. We do not agree with the court that the conditions in this contract were for the benefit of the investment company, but they were for the benefit of both. There was a good consideration moving from each to the other for their mutual covenants: on Mrs. Chambers's part, that she would pay, or forfeit what she had already paid and surrender all claims to the property; on the part of Anderson and Woodnutt, the money paid by Mrs. Chambers was a consideration for their agreement to allow her to pay out, if she paid promptly, or to keep what they had and repossess themselves of the land.

We think the rule laid down in *Railroad Co. v Brickley*, supra, states the law about correctly; but the rule is a harsh one, and we doubt exceedingly whether or not the court would have enforced it if the railroad company had not tendered to Brickley the payment he had made.

The case of *Land Co. v. Perry*, 23 Kas. 140, is simply in line with *Railroad Co. v. Brickley*, 21 id. 275, and would have been decided the same way had not the land company extended time, thereby waiving its right to forfeit the contract and hold Perry to a strict compliance. We therefore have no fault to find with this case. There were some facts about it which took it out of the harsh rule laid down in 21 Kas.

We have carefully examined the case of *Blood v. Enos*, 12 Vt. 625, and it does not seem to have any bearing at all applicable to the questions raised in *Bohart v. Investment Co.*, supra.

If we are correct as to the proper construction of the contract, then the petition does not state facts sufficient to constitute a cause of action. It does not state that plaintiffs in error ever were, or are now, in possession and refuse to deliver it. They do not allege that she claims that there is anything due her by reason of the advanced payment. There certainly is nothing in the contract that in any way resembles

an equitable mortgage. By the very terms of the con-
tract, she (Mrs. Chambers) had no interest in the lot at the
time of the commencement of this action. Instead of this be-
ing an equitable mortgage, it is a conditional sale, and depends
on conditions subsequent, to wit, the payment of certain sums
of money. No title passed by this contract, nor was it in-
tended that any should pass until the conditions were all com-
plied with. No greater libel could be published against this
"cutthroat" contract than to call it an equitable mortgage.
Certainly, honesty ought to be satisfied when it is put *in statu
quo*, and paid more than one-third of the purchase price, or
$167, for its trouble.

*G. A. Vandeveer*, for defendants in error:

The defendants in error had the right under this contract
to declare a forfeiture if they chose to do so, but if not, they
had the right to recover the purchase money which the plain-
tiffs in error agreed to pay. We do not deem it necessary to
proceed further with the argument of this question, because
this court, in *Bohart v. Investment Co.*, 49 Kas. 94, has passed
upon the very same question we are discussing here and we
rely upon the authority of that case and the cases there cited
by the court.

The opinion of the court was delivered by

HORTON, C. J.: The contention upon the part of Mary E.
Chambers is that, under the provisions of the written contract
signed by her, she had the option to abandon the purchase at
any time upon forfeiting all money paid by her thereon; that
thereby the contract became wholly void, and all the parties
were thereupon released therefrom. It is argued in her in-
terest that the written contract should be so construed as to
allow her to pay out and take the land if she desired so to
do, according to the terms thereof; or, by refusing to pay,
that the contract permitted her to be released therefrom upon
the surrender of the property and forfeiting the payments
made. It was decided in *Bohart v. Investment Co.*, 49 Kas.

94, upon a written contract containing a provision similar to those now under consideration, that

"The provision in the contracts making them null and void if Bohart made default in the payment of his installments, or any installment, was for the benefit of the investment company. The company could have insisted upon this provision, and had the contracts annulled. It also had the right or option to declare a forfeiture for the nonpayment of the installments, or any installment; but it also could waive that right. A waiver of the right to declare a forfeiture for nonpayment at a specified time is not a rescission of the contract. The investment company, as the vendor, is entitled to its money upon the contract, and the vendee to the lots therein described." (*Barrett v. Dean*, 21 Iowa, 423, and *Sigler v. Wick*, 45 id. 690.)

The law as declared in that case is challenged by the attorneys of Mary E. and .C. C. Chambers, and we are asked to reëxamine the question. We have patiently and laboriously complied with this request, but after such examination we must reiterate what was then said. The law upon the question presented is well settled.

In *Wilcoxson v. Stitt*, 4 Pac. Rep. 629 (Cal. 1884), it was held that

"Where, in an agreement for the sale of land, the parties stipulate that, 'in event of the failure to comply with the terms of the agreement, the vendor shall be released from all obligation to convey, and the vendee shall forfeit all right thereto, and the agreement shall be void,' the meaning of such clause is, that such agreement is void only at the election of of the vendor, who can avoid it or enforce it at his option."

In that case the vendor agreed to sell a tract of land for $18,480. Of this sum, the purchaser paid one-half, and agreed to pay the remaining one-half on or before the 21st of March, 1878, together with interest. The action was brought to recover the sum last mentioned in the contract, with interest, etc.

*Canfield v. Wescott*, 5 Cow. 270, was an action of covenant on articles of agreement under seal, to recover certain install-

mems of the purchase money. In that case, the following clause in the articles came under consideration:

"The said Daniel [the defendant] hereby agrees that, should he fail in performing any part of above covenants, that this contract shall become void and of no effect, and that the said party of the second part [the testator] shall and may reënter and take possession of the said premises, without hinderance or molestation."

The court said:

"The provision that this agreement should be void was for the benefit of the vendor. On the vendee's default, the vendor might, therefore, consider the agreement void, at his own election, or affirm it, and bring his action on the covenants; and they said this had been often so held in much stronger cases; as, where the provision in the articles was general and positive, in the words of both parties, that if the vendee failed to perform, the contract shall be void."

*Church v. Ayres*, 5 Cow. 272, follows the last case cited, and the court in that case says: "It is a settled principle, that a party in whose favor a provision is made by the contract may waive it, if he so pleases." (See, also, *Cartwright v. Gardner*, 5 Cush. 281; *Mason v. Caldwell*, 5 Gilm. 196; *Smith v. Mohn*, 87 Cal. 489, same case, 25 Pac. Rep. 696; 1 Pom. Eq. Jur., § 446, and cases cited; *Dooley v. Watson*, 1 Gray, 414; *Hooker v. Pynchon*, 8 id. 550; *Daily v. Litchfield*, 10 Mich. 29.)

The law is similar in reference to conditions contained in leases. (*Clark v. Jones*, 1 Denio, 518. See *Dakin v. Cope*, 2 Russ. 170; *Dumpor's Case*, 1 Smith, Lead. Cas. 97, 98; *Smith v. Miller*, 13 Atl. Rep. [N. J.] 39; *Ray v. Gas Co.*, 20 id. [Pa.] 1065.) In the opinion in this last case, the court says: "No case has been brought to our notice in which the lessee was allowed to take advantage of his wrong, or to set up his own default to work a forfeiture of his own contract." (See, also, *Phillips v. Vandergrift*, 23 Atl. Rep. [Pa.] 347; *Agerter v. Vandergrift*, 21 id. [Pa.] 202; *Appeal of Wills*, 18 id. [Pa.] 721.)

Under the authorities, it was the undoubted intention of all the parties to the written contract, when they inserted the clauses permitting the contract to be declared null and void upon default of Mary E. Chambers, to provide a penalty to insure the prompt performance of the contract by her. If the refusal of Mrs. Chambers to perform the terms of the contract prevents an action from being maintained thereon against her, the agreement leaves everything in her own hands. It allows her to defeat or make the contract operative as may best subserve her interest, without any discretion on the part of the others. It makes it binding on the seller, but not on the buyer. But this is not law. The provisions in the contract permitting it to be regarded null and void could only be taken advantage of at the election of the plaintiffs below, who can avoid it or enforce it at their option.

The case of *Bradford v. Limpus*, 10 Iowa, 35, to which we are referred, shows that the provisions of forfeiture were not for the benefit of the grantor or seller only. In that case, Bradford sold certain land to Limpus for the consideration of $4,600; $1,700 cash, and the remainder was represented by three notes, payable as follows: Two of them for $1,000 each, payable in one and two years, and the other for $900, payable in three years, and, upon payment of these according to their tenor, Bradford was to execute and deliver a good deed to lands. To secure the faithful performance of this on Bradford's part, he gave a bond for $1,200, conditioned as follows:

"That if Limpus failed or neglected to pay the notes, or either of them, and especially the first one, according to the tenor thereof, time being of the essence of the contract, then Bradford should have full power to enter upon said real estate and take full possession thereof; and, if the failure to pay was on the first note, then the contract should be void, and said Bradford shall take possession of the premises, and refund to Limpus or order the sum of $1,200, without interest, out of the $1,700 so paid in hand, $500 thereof having been forfeited by reason of said failure on the part of Limpus to comply with the terms of the contract."

As Limpus was to have returned to him $1,200, if he failed or neglected to pay the note or notes described in the contract, it clearly appears that the forfeiture clause placed in that contract was for *his benefit, not wholly for the benefit of Bradford.* That case is different from this, because there is no provision in the contract under consideration requiring any money to be refunded to Mrs. Chambers. The forfeiture clauses placed in this contract were wholly for the benefit of the parties selling the real estate, and these clauses may be waived by them. A party to a contract is not permitted to avoid it by his own wrong.

The judgment of the district court will be affirmed.

All the Justices concurring.