# Verstine *v.* Yeaney.

*Equity—Bill for partition—Decree pro confesso.*

Where on a bill in equity for partition it appears that three of the defendants, although represented by counsel of record, did not demur or answer, and it further appears that on an application to open a decree pro confesso entered against them, their counsel, shortly after an amended bill had been filed, had notified them that he could no longer represent them since he represented other parties in the suit adverse to their claims, and it also further appears that the defendants took no steps to employ other counsel, the court cannot as a matter of right, but only as a matter of grace, permit the defendants, on the motion to vacate the decree, to go into a defense on the merits.

*Evidence—Assignment to make party competent witness.*

An assignment by a party to a controversy, made only for the purpose of enabling him to sustain the suit by his testimony, is not made in that good faith which the statute intends, and is ineffectual to accomplish that purpose.

*Contract—Vendor and vendee—Option.*

An agreement to purchase land with a stipulation that if the purchaser does not make the payments provided by the agreement within the limits of the times specified, the agreement is to be null and void, and all parties released from liability, is a mere option, and if the purchasers do not make payments within the times specified they have no interest in the land.

Argued Oct. 12, 1904. Appeal, No. 52, Oct. T., 1904, by H. H. Brosius, John B. Myers and W. H. Stamey, from decree of C. P. Jefferson Co., April T., 1903, No. 1, on bill in equity in case of F. L. Verstine et al., trading as Verstine, Hibbard & Company v. Susanna Yeaney et al. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and THOMPSON, JJ. Affirmed.

Bill in equity for partition. Before REED, P. J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* among others was the decree of the court.

*Charles Corbet,* with him *C. S. McCormick,* for appellants.— Being for the benefit of the grantors the words of the forfeiture clause become the language of the grantors, to be construed most strongly against the grantors and in favor of the grantees: Leatherman v. Oliver, 151 Pa. 646 ; Philadelphia Tool Co. v. Assurance Co., 132 Pa. 236 ; McMillan v. Phila. Co., 159 Pa. 142.

Prompt exercise of a right of forfeiture is necessary, and the proof should be clear : Thompson v. Christie, 138 Pa. 230 ; Forsyth v. North American Oil Co., 53 Pa. 168 ; Hatton v. Johnson, 83 Pa. 219 ; Steiner v. Marks, 172 Pa. 400.

*J. T. Maffett,* with him *W. N. Conrad,* for appellees.—An option must be exercised according to its terms : Fessler's App., 75 Pa. 483 ; Eliason v. Henshaw, 17 U. S. 225.

Where rights under an option expire on default of performing the condition on the day fixed, no notice or declaration of forfeiture is necessary on the part of the proposed vendor :

Cummings v. Town of Lake Realty Co., 86 Wis. 382 (57 N. W. Repr. 43); Steel v. Bond, 32 Minn. 14 (18 N. W. Repr. 830); Hollmann v. Conlon, 143 Mo. 369 (45 S. W. Repr. 275); Glock v. Howard & Wilson Colony Co., 123 Cal. 1 (55 Pac. Repr. 713); Tevis v. Nugent, 59 S. W. Repr. 9.

OPINION BY MR. JUSTICE BROWN, December 31, 1904:

At the time of the death of John Yeaney the legal title was in him to the undivided fourth of the real estate, of which partition was sought by the proceedings below. When they filed their bill the plaintiffs owned the remaining three fourths. By the twenty-second clause of his will, Yeaney directed that so much of his estate as he had not disposed of in the preceding clauses should be divided among those who would inherit from him under the intestate laws of the state. All of the defendants except the three appellants are those persons. They were made parties to the bill because on July 12, 1898, Yeaney and the other owners of the land entered into an agreement with W. H. Stamey & Company by which he agreed to sell them his interest for the sum of $12.00 per acre, on the following terms: " One half in cash in six months from date of article, the balance in two equal annual payments, with interest. And it is agreed that in case the said W. H. Stamey & Company does not make the payments within the limits of the time specified and stated therein, then this agreement to be null and void, and all parties to be released from all liability herein." It is under this agreement that the appellants claim an interest in the land, and by the bill, as amended, they were distinctly notified why they had been made parties to it, and were sufficiently warned by it to appear and, by answer and proofs, establish their right to the undivided fourth.

The bill was filed March 5, 1903. It was served on Stamey and Brosius, March 14, by giving each of them a copy. On March 24, an appearance was entered for the three appellants by C. Z. Gordon, Esq., a member of the Jefferson county bar, and two days later Myers accepted service of the bill. Subsequently there were three amendments to it, utterly immaterial to the appellants, as they simply made substitutions and changed names in the list of those in the line of descent from Yeaney. On·April 25, 1903, an amendment

was allowed which amplified the bill by setting out fully the
contention of the appellants, and on the same day service of
the amended bill was formally accepted for them by their attor-
ney of record. Nothing more was ever done by them until af-
ter they had been adjudged to be in default. They neither
answered nor demurred, and when on June 10, 1903, the cause
came on to be regularly heard, the only course before the
court was to decree that, as to them, the bill be taken pro con-
fesso, and proceeding ex parte as to them on the answer and
demurrer of the other defendants, and the admissions of the
parties, to declare that the undivided fourth was in the heirs
of Yeaney. If in them, it is not in the appellants as pur-
chasers from him, and they are concluded by the decree in
favor of the heirs, against which they had been given the op-
portunity to save themselves, if they deserved to be saved.

Under the equity rules, when a bill is taken pro confesso,
the court proceeds to a decree ex parte. The same, however,
may be set aside upon cause shown. On June 23, 1903, the
appellants presented their petition to vacate the decree, alleg-
ing as a reason therefor that their attorney, after having ap-
peared for them, had notified them that he could not act for
them, as he had appeared for two of the other defendants whose
interests were adverse to theirs, and further, that they had not
been notified of the amended bill. There was a still further
averment that they expected to be able to prove that the terms
stipulated in the agreement of July 12, 1898, for the payment
of the moneys due on the contract, were waived by Yeaney,
and leave was asked to answer the amended bill. A rule was
granted to show cause why the decree should not be set aside
and the petitioners allowed to answer. This was subsequently
discharged.

On the hearing of the rule granted to vacate the decree the
appellants offered nothing to excuse their default, though given
the fullest opportunity to do so. Mr. Gordon, who had ap-
peared for them, subsequently notified them that he could not
represent them, for the reason already stated. This is all he
did. He never withdrew his appearance, nor asked leave to do
so. He accepted service for them of the amendment to the bill
and stood on the record as their sole counsel up to the day the
bill was taken against them pro confesso. They were all mem-

bers of the bar, but allowed his name to so remain on the record as the only one authorized to represent them and as the proper person upon whom to serve the amendment, which disclosed all the facts necessary to pass upon their alleged title. Though they each disclaim any knowledge or recollection of the filing of the amendment until after the bill had been taken pro confesso, they had, as the court properly held, legal, if not actual, notice of it. In view of their failure to have other counsel appear for them, after the notice given them by Mr. Gordon, they must be regarded as having been so negligent as to make their default in not answering or demurring inexcusable, and the court might well have refused to disturb the decree for that reason alone; but, notwithstanding such default, there was a disposition below to relieve them from it, if they could show there was any merit in their alleged claim, and they were allowed to present the same as fully on the hearing of the rule as they could have done if they had answered in the first instance and their proofs been heard. This surely was not of right, but of the court's pure grace.

With appellants' whole case before it, the court's conclusion was that their claim to an interest in the land must be determined by the allegations of the bill. This was manifestly so, for no testimony was offered to show that the agreement of July 12, 1898, should be varied in any manner, or that the appellants had any rights whatever under it, except as therein expressed. It is true Stamey, on the very day he offered himself as a witness at the hearing of the rule to set aside the decree, undertook, by an assignment of his interest in the agreement, to qualify himself to testify as to what had taken place between him and Yeaney, in support of the contention that the time for the payment of the purchase money had been extended; but the court correctly said the conclusion was irresistible that the sole purpose of the assignment was to make him a competent witness, and it was, therefore, ineffectual to accomplish that object. In Darragh v. Stevenson, 183 Pa. 397, we said: " We regard it as clear that an assignment by a party to a controversy, made only for the purpose of enabling him to sustain the suit by his testimony, is not made in that good faith which the statute intends."

By the terms of the agreement, one half of the purchase

money was to be paid within six months from its date—July 12, 1898—and the balance in two equal annual payments, with interest. No payment was ever made, and there was no attempted tender until January 12, 1901—two years and six months after the agreement had been executed. With nothing before the court to show why its terms, as plainly written, should not bind the parties to it, the only question to be determined was as to their legal effect, and no other could have been given them than that they mean that if W. H. Stamey & Company did not make payments within the limits of the time specified, the agreement was to be null and void.

The agreement is practically an option and was so regarded below. It is true it is an unconditional covenant on the part of Yeaney to convey, and there is an agreement on the part of Stamey & Company to pay, but their agreement has attached to it, doubtless at their instance, a proviso that if they do not make the payments at the time stipulated, they are to be released from all liability. The agreement in Yerkes v. Richards, 153 Pa. 646, was substantially the same, and the condition as to failure to make payment similar. We declared it to be an option. Here Stamey & Company never exercised their option by paying the first installment when it became due, and by their voluntary default elected to say they would not take the property. Their complaint is that Yeaney's personal representative and heirs are asking for a forfeiture of their rights under the agreement, but the truth is they never had any right under it, except that of accepting the offer to sell by paying Yeaney the first payment, in accordance with the terms of the agreement, and when, on January 12, 1901, they tried to pay all of the purchase money, they had no right to demand the deed, and of course have no such right now.

The case was most intelligently disposed of by the court below.

Its decree is affirmed and the appeal dismissed at appellant's costs.