WOOD v. PLANTERS' OIL MILL.

Opinion delivered October 21, 1905.

1.  SALE—BREACH OF CONTRACT.—Where plaintiff contracted to sell defendant 100 tons of cotton seed at a certain price, and, after delivering 5 tons, defendant requested that the delivery be postponed for a week or so, and thereafter refused to receive the cotton seed, telling plaintiff to go and sell them, and defendant would pay the loss, whereupon plaintiff at once sold them at a loss of $200 on the contract price, an instruction that if the contract was broken by a refusal to accept and pay for the seed, "the measure of damage would be the actual loss to plaintiff by reason of such breach, not exceeding the difference between the price agreed upon and what the plaintiff could have, with reasonable diligence, sold the seed for in the market upon receipt of notice of defendant's refusal to accept them," was confusing, as the first refusal to receive the seed did not constitute a breach of the contract.   (Page 573.)

2.  SAME—WAIVER OF BREACH.—Mere silence will not constitute a waiver of a breach of contract; it is only where a party is silent when he ought to speak that he will be estopped to speak.   (Page 574.)

Appeal from Conway Circuit Court.

CARROLL ARMSTRONG, Special Judge.

Reversed.

STATEMENT BY THE COURT.

This is a suit by the appellant to recover damages from the appellee for breach of contract in refusing to accept and pay for 100 tons of cotton seed sold by appellant to appellee at $17 per ton.

Appellee answered, admitting the contract of purchase as alleged by plaintiff and the receipt of five tons of the seed, which it paid for, denied a breach of the contract by it, and on

counterclaim alleged a breach of the contract by appellant, and asked damages therefor.

It appears that on October 16, 17, or 18, 1902, appellant sold to appellee 100 tons of cotton seed at $17 per ton, and on the same day he sold to the Morrilton Cotton Oil Company 100 tons of seed at the same price. On October 20 appellant sent seven, eight or ten wagons of seed to appellee, commencing on that day to deliver the seed under the contract. Appellee received four loads, and refused to receive any more at that time, and on the next day, October 21st, wrote appellant the following:

"*Mr. W. L. Wood, Farm:*

"DEAR BILL:—I cannot receive your seed for a week or so yet. Do not send them until I notify you. Say nothing about this for my good as well as yours. Will explain when I see you.

"PLANTERS' OIL MILL,

By O. T. BENTLEY."

Upon receiving this note appellant proceeded to deliver the 100 tons of seed he had sold the Morrilton Cotton Oil Company. On November 1, 1902, appellant offered to resume delivery of seed to the appellee under the contract, but appellee refused to receive them at this time, telling appellant that he "would have to go sell them, and that whatever his damages were in the final outcome of the transaction it would pay."

Appellant on the same day sold the seed to the Morrilton Cotton Oil Company at $14.80 per ton, the price of seed at that time, representing a loss to appelleant of $209 on the contract price. On November 24th, appellant and appellee's agent, Bentley, met at Spear Hotel in Morrilton, and appellant demanded of appellee $209.

Up to this point there is no conflict in the evidence, but appellee refused to pay the $209, claiming that up to the time the demand was made it had not broken the contract; that as no time was specified for the delivery of the seed, it was still within the terms of the contract by being willing to receive the seed at the contract price, so soon as it could arrange a proper place to receive them. Appellee was permitted, without objection from appellant, to testify to the effect that it never did refuse to receive the seed under the contract; that what it did was only with the view of getting more time to prepare a place where

they could be safely stored, and that appellant never refused to deliver the seed under the contract until seed had advanced in price to nineteen dollars per ton, and that then he refused to deliver them altogether.

The following instructions were given at the request of appellee over the objections of appellant:

"2. If the contract was made as claimed by plaintiff, and was broken by defendant by a refusal to accept and pay for the seed, the measure of damage would be the actual loss to plaintiff by reason of such breach, not exceeding the difference between the price agreed upon and what the plaintiff could have, with reasonable diligence, sold the seed for in the market upon receipt of notice of defendant's refusal to accept them."

"3. If, at the time defendant notified plaintiff that no more seed could be taken at that time, seed were still worth as much as defendants had agreed to give, it was the duty of the plaintiff to sell to other parties and prevent a loss; and if he failed to do so when with reasonable diligence he could have done so, he could not recover in this suit more than nominal damages."

"5. If, after the contract was broken (if it was broken), O. T. Bentley, the agent of defendants, met plaintiff, and notified him that defendant was in a position to take the seed under the contract, and plaintiff assigned as a reason for not delivering them that the roads were in too bad condition, and Bentley notified him that he could deliver them after the roads improved, and plaintiff agreed to do so, or by his silence or conduct led Bentley to believe that he had agreed to the proposition, and intended to carry out the agreement as originally made, and these facts appear from the evidence, you would be justified in finding that plaintiff had waived any former breach; and, if you so find, the verdict should be for the defendant, unless it is shown that he afterwards offered to deliver the seed, and defendant refused to accept them."

Appellee abandoned its counterclaim. The verdict and judgment were for appellee.

*W. P. Strait,* for appellant

No question of waiver of the breach or confession and avoidanse was raised by the pleadings, and it was error to give

instructions 4 and 5 for appellee.  29 Ark. 500; 41 *Id.* 393; 60
*Id.* 606; 11 Enc. Pl. & Pr. p. 665, 626.  Instruction 5 is other-
wise erroneous.  24 Ark. 251; 55 *Id.* 423; 62 *Id.* 135, 316; 58
L. R. A. 788 and notes, etc.

Nos. 2 and 3 are abstract, and have no application to this
case.  16 Ark. 628; 14 *Id.* 530.

*Charles C. Reid,* for appellee.

1. Instruction No. 4, on the subject of waiver of breach of
contract, was warranted by the testimony.  No specific objection
was made to it, and the pleadings will be treated as amended to
conform to the testimony.  1 Sneed (Tenn.), 417; 3 Cold. 178; 40
Ark. 352; 44 *Id.* 524; 54 *Id.* 289; 59 *Id.* 215; 24 *Id.* 326; 62 *Id.*
262.  Where testimony is introduced, without objection, covering
an issue not in the pleadings, the pleadings are considered as
amended, and it is the duty of the court to instruct the jury on
the issue.  46 Iowa, 60; 74 Ga. 534; 69 *Id.* 252; 3 Watts (Penn.),
50; 80 Minn. 408; 57 S. C. 507; 25 Cal. 460.

2. There is nothing to show that the motion for new trial
was overruled, nor that time was given to file bill of exceptions.
A recital in the bill of exceptions is not sufficient; it should be
shown by record entry.  34 Ark. 698; 47 *Id.* 508; 31 *Id.* 725.

*W. P. Strait,* for appellant in reply:

In this case the pleadings were not defective or imperfect—
the issue was clear-cut, and the pleadings were not amended.
Appellant objected to instructions on outside issues.  The instruc-
tions were erroneous and prejudicial.  30 Ark. 62; 29 *Id.* 500;
41 *Id.* 393; 46 *Id.* 132; 13 *Id.* 88; 7 *Id.* 516.

WOOD, J., (after stating the facts.)  The cause, as we view
the undisputed proof, was presented to the jury upon an erro-
neous theory.  The instructions for appellee were not grounded
upon the undisputed evidence.  The second instruction assumes
that it was the duty of appellant to have exercised reasonable
diligence to sell the seed "upon receipt of notice of the defendant's
(appellee's) refusal to accept them."  There is no contention,
either in the pleadings or the proof on the part of appellee, that
it refused to accept the seed in a manner to breach the contract.

It denies any breach, and claims that the notice to appellant of its inability to receive the seed was merely a postponement of the delivery until such time as it could safely receive them, and that appellant acceded to this; and appellant makes no claim, as we understand his evidence, that the contract was broken by appellee until it had directed appellant to sell the seed, and had thus indicated its intention not to receive them. The direction to appellant to sell, according to the evidence on both sides, was some ten days or two weeks after the written notice and request to appellant to delay the delivery of the seed. So this instruction is not based on the evidence.

Number three for appellee was erroneous for the same reason. The proof on the part of appellant shows that he did not claim a breach of the contract by appellee until it refused to accept the seed and directed him to sell same, promising to save him from loss. The second and third instructions for appellee seem to be predicated upon the theory that the written notice from appellee to appellant might be treated as a breach of the contract. There is nothing in the proof to justify this. Neither side claims this as a breach, and it certainly could not have been the duty of appellant to sell the seed until there was a breach of contract, and appellee could not complain of a failure to make a sale when there was no failure, and when the sale was made by the direction and consent of appellee.

Instruction number five is likewise abstract and erroneous for the lack of evidence to support it. If it could be said that appellant, by failing to object to the evidence, if any, tending to show a waiver of breach of contract, thereby consented that such issue might be presented, although not raised by the pleadings, still the instruction was erroneous in telling the jury that if appellant "by his silence or conduct led Bentley to believe," etc. There is no evidence of a waiver of breach by silence. Nor indeed, if there was a breach of contract, is this a case where it was waived by silence. It nowhere appears that silence of appellant, if he was silent, changed in any manner the status of appellee after the alleged breach occurred. It is not shown wherein appellant was in duty bound to speak, in order to prevent some financial loss to appellee. *Fox* v. *Drewry,* 62 Ark. 316.

If appellee violated the contract, it would require something more than mere silence upon appellant's part to constitute a waiver thereof, under the facts as disclosed by this record.

For the errors pointed out the judgment is reversed, and the cause is remanded for a new trial.