## BARTLESVILLE OIL & IMPROVEMENT CO. v. HILL.

No. 1345.   Opinion Filed December 12, 1911.

Rehearing Denied January 23, 1912.

(121 Pac. 208.)

1. **VENDOR AND PURCHASER**—Breach of Contract—Forfeiture. B. & Co. entered into a written contract with L. for the sale of a town lot in Indian Territory.  One-fourth of the purchase price was paid in cash, and notes given in equal installments for the balance, maturing in 6, 12 and 18 months.  The contract contained numerous provisions and covenants to be performed and observed on the part of L:, among which was the payment of the installment notes within sixty days from the maturity thereof.  It was further provided that a breach of any one of the conditions should work a forfeiture of the contract to all intents and purposes as fully, effectually, and completely as if the contract had never been made.  **Held**, that a failure to pay said installments within the time fixed by the contract forfeited as to L. and those claiming through him their rights to such lot; the failure to pay such installments being in no way attributable to B. & Co.

2. **SAME**—Rights and Liabilities of Parties—Mortgage of Contract. L. assigned the said contract to B., who mortgaged the same to H., who brought suit to foreclose.  None of the installments were ever paid, though H. in his foreclosure suit, brought after default, tendered the amount due.  **Held**, that the contract was forfeited, and that H. acquired no right or title by virtue of his mortgage.

3. **SAME**—Construction of Contract—Transfer of Title.  The contract further provided that L. should have no right or power to sell, assign, lease, sublet, or in any manner transfer any·interest or right that he may have acquired under the terms of the contract without the written consent of B. & Co., which was never given.  **Held**, that the contract was executory; that no equitable interest passed to L. at the time of making the contract; that L. had a full right to acquire the equitable title upon compliance with the terms of the contract but not otherwise, and would then be entitled to demand a deed conveying the legal title to the premises.

4. **SAME**—Rights of Parties—Forfeiture of Contract.  Mere delay in declaring a forfeiture on the part of B. & Co., unaccompanied by any act of assent, did not constitute such laches or waiver as would preclude it from asserting its reserved rights, even though after suit brought by H.

(Syllabus by Sharp, C.)

*Error from District Court, Washington County; John J. Shea, Judge.*

Action by J. I. Hill against the Bartlesville Oil & Improvement Company. Judgment for plaintiff, and defendant brings error. Reversed, with directions.

On July 24, 1907, the Bartlesville Oil & Improvement Company, a corporation, made and entered into a written contract to sell lot 10, in block 8, in McDaniel's addition to the city of Bartlesville, to F. N. Lewis, in consideration of the payment by him of the sum of $350, $87.50 in cash, and three notes of like amount, due in 6, 12, and 18 months, respectively, from the date of contract, with interest. The contract contains the following, among other provisions:

"And it is expressly agreed and covenanted that the said party of the second part, his heirs, representatives, lessees, and assigns forever shall never drill, bore, or otherwise prospect for oil, gas, or other mineral of any kind or character whatsoever at, upon, or, in the premises herein described and hereby agreed to be conveyed, or any part thereof, and shall never mine or take from said premises any oil, gas, or mineral of any kind or character, nor shall said second party, or his heirs, representatives, lessees, or assigns, ever at any time, suffer, allow, or permit any other person or persons so to do—hereby agrees to sell and convey unto the party of the second part the certain tract and parcel of land described as follows, to wit: Lot number ten (10) in block number eight (8), in what is known as McDaniel's addition to the city of Bartlesville, Indian Territory."

Said contract further provides that upon receiving payment in full in the manner therein mentioned, according to the terms of the notes given, the said party of the first part should execute and deliver to the party of the second part a warranty deed, subject to and upon the conditions therein expressed. These covenants and conditions have reference to the previous clause prohibiting the prospecting for oil, gas, or other mineral on said premises; and provides, "at, upon, or in the premises, herein agreed to be conveyed;" and further:

"And it is hereby understood and agreed by and between the parties hereto that the second party will receive and accept a

deed subject to the conditions and covenants therein to be expressed, as hereinbefore stated, as a full compliance and fulfillment of the obligations of the first party under this agreement."

It was further provided in said contract that:

"It is further understood and agreed by and between the parties hereto that until the completion of the purchase of said premises, as herein provided for, the second party shall hold the same as tenant to the party of the first part. If said party of the second part shall fail to perform this contract, or shall fail or refuse to comply with any of the stipulations, conditions, and covenants herein, to be kept and performed by him, or any part of the same, or if said second party shall fail to pay any of said installments and the interest thereon, within sixty days after the same shall become due and payable, then, and in that event, the first party shall have the right to declare this contract void and at an end, and retain all payments which may have been made thereunder, and all improvements that may have been made on said premises, as rental and liquidated damages, and may consider and treat the party of the second part as its tenant holding over without permission or right, and may enter and take immediate possession of said premises, including all buildings and other improvements thereon situated, and remove the party of the second part therefrom. It is also understood and agreed that the party of the second part shall have no right or power to sell, assign, lease, sublet, or in any manner transfer any interest or right he may have under and by virtue of this contract and agreement except with the written consent of the party of the first part."

On January 7, 1908, Lewis assigned this contract to J. B. Wise by writen indorsement on the back thereof, and on the same day said J. B. Wise, joined by his wife, Fannie E. Wise, executed a mortgage on said lot and other real as well as chattel property to defendant in error, J. I. Hill, to secure the payment of two certain notes aggregating $1,213.26, originally owing by Wise to the Coffeyville Mercantile Company, and by it assigned and transferred to Hill. The Lyons Milling Company also held a mortgage on said premises, but same was junior in point of time to the Hill mortgage. On April 8, 1909, Hill filed suit in the district court of Washington county, making J. B. Wise, Fannie E. Wise, F. N. Lewis, Julia E. Lewis, the Bartlesville Oil & Improvement Company, and the Lyons Milling Company, defendants, in which

suit among other relief sought was the foreclosure of the Wise mortgage. Defendant the Bartlesville Oil & Improvement Company on April 27, 1909, executed in writing a declaration, seeking to cancel its contract to sell, theretofore made on July 24, 1907, which was duly executed and placed of record, and on May 27, 1909, filed in said action its answer and cross-petition, praying that the Hill mortgage to lot 10 in block 8 be given up for cancellation, and that the same be satisfied of record, and that the defendant Lyons Milling Company be required to disclose its interest, and that thereupon the same be declared null and void. None of the installment notes were ever paid, though plaintiff, in his petition, tendered the amount claimed to be due, with interest, and asked that the Bartlesville Oil & Improvement Company be compelled to accept the same and perform the provisions of the contract as agreed upon with the vendee. After reply by plaintiff Hill, the case was deemed at issue, and after a trial before the court on January 5, 1910, judgment was rendered in favor of plaintiff, according to the prayer of his petition.

*John E. Palmer,* for plaintiff in error.

*C. C. Julian,* for defendant in error.

Opinion by SHARP, C. (after stating the facts as above). What interest, if any, had defendant in error in lot 10, block 8, McDaniel's addition to the city of Bartlesville, on April 8, 1909, the date of the filing of plaintiff's petition to foreclose the Wise mortgage on said lot? A determination of this question is decisive of this cause. The contract of July 24, 1907, between plaintiff in error and Ferdinand N. Lewis, provides, among other things, for the payment of the purchase price, equal installments maturing in 6, 12, and 18 months from date. It contains numerous provisions and conditions to be performed and observed on the part of Lewis, the breach of any one of which should work a forfeiture of the contract to all intents and purposes as fully, effectually, and completely as if the contract had not been made. Among the conditions named was that of payment of said installments, with interest, within sixty days after the same became

due and payable. The contract specifically provided that upon the failure to make said payments within the time fixed after maturity the Bartlesville Oil & Improvement Company should have the right to declare the contract void and at an end, retaining all payments received and all improvements erected on said premises as rental and liquidated damages, and that, until the completion of the payment of the purchase price, Lewis should hold as tenant of said company. Upon the happening of this contingency, the company was given the right of immediate possession of the premises, including the improvements thereon erected. It further provided that Lewis should have no right or power to sell, assign, lease, sublet, or in any manner transfer any interest or right he may have under and by virtue of said contract, except with the written consent of the company. This consent it is not contended was ever procured. It is also agreed that none of the installments or any interest thereon were ever paid. The lot belonged to plaintiff in error, and in making a contract concerning the sale thereof the owner had the undoubted right and authority to impose such terms and conditions as it saw fit, so long as the same violated no law or rule of public policy. The conditions imposed were for its own benefit, and the rights of Lewis were fixed by the terms of said contract. Certainly it cannot be said that those claiming through Lewis would have any greater rights than he had. Lewis only had the right to acquire title within the time and in the manner set out in the contract. Neither he nor those claiming under him ever complied with the contract in paying the installment notes or either of them.

In *Ish v. McRae et al.*, 48 Ark. 413, 3 S. W. 440, Cockrill, C. J., in speaking for the court in a similar case, said:

"The first stipulation of the contract is one of purchase and sale. It binds the vendor to convey to the defendant, but to the terms of this agreement there is annexed the condition that, in case of failure in the performance of the agreement to pay the first installment of purchase money, the intended vendee shall thereafter pay rent for the use of the land. It was certainly competent for the parties to enter into a binding agreement of this nature. *Wells v. Smith*, 2 Edw. Ch. [N. Y.] 78; *Id.*, 7 Paige [N. Y.] 22 [31 Am. Dec. 274]. The vendor, being unwilling

to take the hazard of losing both principal and interest of the purchase price, and the rent of the land as well, may make a sale upon condition, and give the vendee an option to hold as purchaser or as tenant after a given day. The vendee here had, in effect, agreed that his right should depend upon the scrupulous adherence to the engagement be made to pay the purchase price, and that time should be a material consideration in the contract."

*Carpenter v. Thornburn,* 76 Ark. 578, 89 S. W. 1047, was an appeal from the chancery court in a case similar in some of its aspects to the one under consideration. It was there held:

"The law on this point, so far as it applies to this case, is very clearly stated by Prof. Pomeroy as follows: 'It is well settled that, when the parties have so stipulated as to make the time of payment of the essence of the contract within the view of equity as well as of the law, a court of equity cannot relieve a vendee who has made default. With respect to this rule there is no doubt. The only difficulty is in determining when time has thus been made essential. It is also equally certain that, when the contract is made to depend upon a condition precedent—in other words, *when no right shall vest until certain acts have been done,* as, for example, until the vendee has paid certain sums at certain specified times—then also a court of equity will not relieve the vendee against the forfeiture incurred by a breach of such condition precedent.' "

1 Pomeroy on Equity, sec. 445; *Quertermous v. Hatfield,* 54 Ark. 16, 14 S. W. 1096; *Nelson v. Sanders,* 123 Ala. 615, 26 South. 518; *Wilcoxson v. Stitt,* 65 Cal. 596, 4 Pac. 629, 52 Am. Rep. 310; *Prather v. Brandon,* 44 Ind. App. 45, 88 N. E. 700; *Kerns v. McKean,* 65 Cal. 411, 4 Pac. 404; *Sutherland v. Parkins,* 75 Ill. 338; *Verstein v. Yeancy,* 210 Pa. 109, 59 Atl. 689; *Murphy v. Myar* (Ark.) 128 S. W. 359; *Sheehy v. Scott,* 128 Iowa, 551, 104 N. E. 1139, 4 L. R. A. (N. S.) 365.

In *Chambers et al. v. Anderson et al.,* 51 Kan. 385, 32 Pac. 1098, it was held that where by a written agreement for the sale of land parties stipulate that in case the second party shall fail to make the payment punctually and upon the strict terms and conditions named, and likewise perform each, all, and every agreement and stipulation, strictly and literally, without failure or default, then the contract, so far as it may bind the first party, should become utterly null and void, and all rights and interests

therein created or then existing in favor of or derived from the first party should utterly cease and determine, and the right of possession and all equitable and legal interests in the premises contracted for should revert to and revest in the first party, without any declaration of forfeiture or act of re-entry, or any other act by the first party to be performed, and without any right of the second party of reclamation or compensation for moneys paid or services performed as absolutely, fully, and perfectly as if the contract had never been made—that such provision was for the benefit of the first party, and the contract should be void only at his election, and that he could either avoid or enforce the contract at his own election. It was said by Horton, C. J.:

"The provision that this agreement should be void was for the benefit of the vendor. On the vendee's default, the vendor might, therefore, consider the agreement void at his own election, or affirm it, and bring his action on the covenants."

In *Prather v. Brandon, supra,* it was said:

"Appellant went into possession under a contract which, if fully performed by it, would result in its ownership of the land; but, if it failed to perform the agreement, the stipulated payments were to become rent. It is quite true that, if a person goes into the possession of real estate under a contract to purchase, he does not thereby become the vendor's tenant so as to become liable for the rent in case the contract is rescinded. *Hopkins v. Ratliff,* 115 Ind. 213, 17 N. E. 288. But we know of nothing to prevent the parties from agreeing that although the contract is originally one of purchase, it may become under certain conditions therein named a lease. It is a matter about which the parties might rightfully contract, and the contract when made may be enforced."

*Canfield v. Westcott,* 5 Cow. (N. Y.) 270; *Church v. Ayers,* 5 Cow. (N. Y.) 272; *Smith v. Mohn,* 87 Cal. 489, 25 Pac. 696; *Bobart v. Republic Investment Co.,* 49 Kan. 94, 30 Pac. 180.

It is manifest from a casual reading of the contract that it was not the intention of the parties that any title should pass to Lewis, except upon full compliance with the terms and conditions therein contained. Cases cited by counsel for defendant in error in which the purchaser from the inception of the contract became vested with an equitable title are not therefore in point.

We think there is no difficulty here in ascertaining from the language used that the parties did not intend or understand that the contract was in any wise executed, but that it was purely executory, and that no present estate in the property, either legal or equitable, was intended to be or was vested in Lewis. *Walker v. Douglas et al.,* 70 Ill. 445.

In the foregoing case it was said:

"A familiar elementary principle of construction applicable here is that it is the duty of the court 'to discover and give effect to the intention of the parties, so that performance of the contract may be enforced according to the sense in which they mutually understood it at the time it was made; and where the intention of the parties to the contract is sufficiently apparent, effect must be given to it in that sense, though violence be done thereby to its words; for greater regard is to be had to the clear intent of the parties, than to any particular words which they may have used in the expression of their intent.' 1 Chitty on Conts. (4th Am. Ed.) 104, 105."

In this case it is unnecessary to do violence to the words, but simply to give effect to the plain and unambiguous language used. *Bostwick c. Frankfield,* 74 N. Y. 207.

The only right that Lewis had under the contract was that of acquiring the title in question upon full performance of all the conditions on his part, according to the terms thereof. No equitable interest passed to him at the time of making the contract. The contract was executory, but Lewis had full right to acquire the equitable title upon compliance with the terms of the contract, and then to demand of plaintiff in error a deed conveying to him the legal title.

In *Chappell v. McKnight,* 108 Ill. 570, it was said:

"A mere contract or covenant to convey at a future time on the purchaser performing certain acts does not create an equitable title. It is but an agreement that may ripen into an equitable title. When the purchaser performs all acts necessary to entitle him to a deed, then, and not until then, he has an equitable title, and may compel a conveyance. (Bispham's Equity, sec. 365.) When the purchaser is in a position to compel a conveyance by a bill in chancery, he then holds the equitable title. Before that he only has a contract for a title when he performs

his part of the agreement." *Baldwin v. Morey,* 41 La. 1105, 6 South. 796; *Smith v. Jones,* 21 Utah, 270, 60 Pac. 1104.

A distinction must be made between those cases in which, in the absence of a prohibitory provision, an equity may attach, and those in which there arises an express intent, or clear legal implication that such shall not be the case. The creation of the right is here fixed by the language employed in the contract.

In Warvelle on Vendors (2d Ed.) sec. 176, the doctrine of *Chappell v. McKnight, supra,* is reannounced and approved. It is there said:

"The essential feature of an equitable title is that it is one which appeals to equity for confirmation and enforcement. Hence a mere contract or covenant to convey at a future time on the purchaser performing certain acts does not create an equitable title. It is only when the purchaser performs or tenders performance of all the acts necessary to entitle him to a deed that he has an equitable title and may compel a conveyance. Prior thereto he has, at best, only a contract for the land when he shall have performed his part of the agreement." *Millard v. McMullin,* 68 N. Y. 345; Washburn on Real Property, sec. 779; Reeves on Real Property, sec. 660.

To admit that a third party some fifteen months after default in the first note was made would have the right to call upon the owner who had contracted to sell lands to another to convey to him would be to substitute a new and different contract from the one entered into by the original parties. It would leave everything in the hands of Lewis or his assigns, and they could or not, at their pleasure, compel plaintiff in error to act. The provision of the contract in question was made for the benefit of plaintiff in error, and to put the construction thereon contended for by defendant in error would be to allow Lewis or his assigns to take advantage of his or their negligence in the payment of the consideration. *Wilcoxson v. Stitt,* 65 Cal. 596, 4 Pac. 629, 52 Am. Rep. 310; *Chambers et al. v. Anderson et al.,* 51 Kan. 385, 32 Pac. 1098; *Rock Island Lumber Co. v. Fairmount Town Co.,* 51 Kan. 394, 32 Pac. 1100.

In Warvelle on Vendors, in section 107, it is said:

"Where the contract is clear and unambiguous in its terms, it is the best evidence of such intention; and, even though the

parties may have failed to express their real intention, there is no room for construction, and the legal effect of the agreement must be enforced according to the plain import of the language employed. If the language is ambiguous, courts uniformly endeavor to ascertain the true meaning, and to adopt such a construction as will give effect to the provisions which carry out the evident intent."

The contract entered into by the original parties, according to the plain import of the language used, provided that, on failure to pay any of the installments and interest thereon within sixty days from the time the same should become due and payable, the party of the first part was given the right to declare the contract void and at an end, and to retain all payments which may have been made thereunder and all improvements that may have been erected on the premises as rental and liquidated damages. Under this contract, Lewis entered into possession of the premises, made the initial payments, and undertook the payment of the three installment notes, and a few days before the first note became due attempted to assign his contract to J. B. Wise, who on the same day executed a mortgage thereon to defendant in error, who took with full knowledge of the character of the contract held by Lewis, the same being set out in substance in the body of the mortgage. Thereafter neither Lewis, Wise, nor the mortgagee, Hill, made any effort to carry out the provisions of the original contract, and fifteen months passed before the mortgagee instituted his foreclosure proceedings, and in which he tendered the amount due, with interest. In arriving at a proper determination of this question, it is not necessary to pass upon the validity of the inhibition in the contract against a sale or assignment, or other transfer of the rights of Lewis, without obtaining the written consent of plaintiff in error. As already observed, neither Lewis, Wise, nor Hill, within the time fixed, complied with the terms of the contract.

Under the plain and unambiguous terms of the original contract, we must conclude that Lewis obtained only a right to purchase upon full performance of the terms and conditions imposed; that neither he nor his assigns having performed these conditions, as expressly provided by the terms of the contract, no es-

tate ever passed to either of said parties, and consequently defendant in error has no title, right or equity, the subject of foreclosure, unless it be that, on account of the conduct, laches, or some act of plaintiff in error, some such right should exist. We have carefully read the record, and fail to find that plaintiff in error has in any respect waived the rights retained by it under its contract. Default in payment of the first note occurred March 24, 1908, of the last, March 24, 1909, or thirty days prior to the date on which plaintiff in error executed its declaration of cancellation. In *Kerns v. McKean,* 65 Cal. 411, 4 Pac. 404, it was held that indulgence or nonaction was not a waiver; neither was delay in filing a notice. In *Wood v. Planters' Oil Mill,* 76 Ark. 570, 90 S. W. 18, it was held that silence did not constitute a waiver of a breach of the contract; that it was only where a party was silent *when he ought to speak* that he would thereafter be estopped to speak; and that the silence of appellant therein in no manner changed the status of appellee after the alleged breach occurred. *Williamson Tr. v. Paxton,* 59 Va. 475; *Nelson v. Sanders,* 123 Ala. 615, 26 South. 520.

For the reasons assigned, we think that the trial court erred in rendering judgment in favor of plaintiff below, and against defendant the Bartlesville Oil & Improvement Company; that as to these parties the judgment below should be set aside, with directions to enter a decree in favor of plaintiff in error in conformity with this opinion.

By the Court: It is so ordered.

All the Justices concur.