## BATES v. ROGERS, Rec., et al.

No. 25393.   Nov. 10, 1936.

Monnet & Savage, for plaintiff in error.

Gibson, Maxey & Holleman, for defendants in error John Rogers, receiver of Superior Oil Corporation, and Superior Oil Corporation.

W. A. Barnett, for defendant in error Alice B. Graham, administratrix of the estate of Alexander E. Graham, deceased.

PER CURIAM. This is an appeal from the district court of Tulsa county. Plaintiff in error, R. P. Bates, was plaintiff in the trial court, and the defendants in error, John Rogers, receiver of Superior Oil Corporation, Superior Oil Corporation, a corporation, and Alice B. Graham, administratrix of the es-

tate of Alexander E. Graham, deceased, were defendants. The parties will be hereinafter referred to as plaintiff and defendants as they appeared in the court below.

On April 30, 1930, cause No. 48284, entitled, "the Exchange National Bank of Tulsa, Oklahoma, and Exchange National Company, a Corporation v. Superior Oil Corporation," was instituted in the district court of Tulsa county, Okla., in which a receiver of the property and effects of Superior Oil Corporation was appointed. Thereafter, in the same cause, Hugh Ownby was appointed special master, with authority to take testimony and report findings and conclusions as to all claims which might be presented against the estate of Superior Oil Corporation.

The plaintiff in the case at bar commenced his action by filing his claim with the receiver appointed in the aforementioned cause, in which claim he asserted that R. P. Bates, the plaintiff, was the owner of an undivided 3/144 interest in the mineral rights in the Victoria Walker lands, described as the northeast quarter of the northeast quarter and the west half of the northeast quarter of section 2, township 9 north, range 5 east, in Seminole county, Okla., and that certain funds had been derived from a 3/8 interest therein which had not been paid to him. This claim was filed with the receiver on November 25, 1930, the plaintiff claiming $12,000, with interest. By subsequent order of the court and agreement of the parties concerned, this action was first heard and determined by said special master, who recommended the denial of relief to plaintiff, which recommendations were excepted to by plaintiff and said report was thereafter approved by the court, and judgment rendered for the defendants. Subsequently, plaintiff's motion for a new trial was denied by the court, and from such ruling and order plaintiff brings this appeal.

An examination of the record discloses the following: In the early part of the year 1928, it was deemed desirable to lease the land involved in this case for development for oil and gas, and consequently, a contract was entered into with the defendant Superior Oil Corporation, by which S. S. Orwig and some 40 other individuals executed a lease to said Superior Oil Corporation. The pertinent portion of that lease provided, among other things, that the lessors leased all the property in question, "To the extent of 5/8 of the working interest, ownership and title to said products, the remaining 3/8 of said working interest and title to be owned by

the lessors in proportion to their respective individual interests, the leased premises to be considered and treated as a unit for all purposes of development and operation for oil and gas," etc. The lease then reserves to the lessors the customary 1/8 royalty.

Provisions 12 and 13 of the lease provide as follows:

"The entire cost and expense of drilling said well to completion and the furnishing of all equipment necessary up to and including tanks shall be borne by lessee, but the expense of all other equipment and of all future development and operation, except the cost of storing oil if required at actual cost thereof, is to be borne by the respective parties hereto in proportion to their respective interest herein, that is to say in the proportion of 3/8 of the working interest to the lessors and 5/8 to the lessee.

"In the event that said well is productive of oil or gas in paying quantities, lessee shall have the right to remove all the material not required for the equipment and operation of said well, but the lessors shall own and receive the benefit of a 3/8 interest in the material required to be left in the well for purposes of operation."

Provision 16 provides:

"Lessees shall have the full management and control of all future operations and developments of the property, the expense thereof to be divided between the lessors and lessee in proportion to their respective interests as herein defined. The representatives of the lessors shall have access to the property at all times, and shall be counseled with in regard to the development and operation from time to time, and especially as to the location and drilling of future wells."

The final provision, numbered 24, provides as follows:

"All agreements herein shall be deemed as covenants running with the land and shall be binding upon the parties hereto, their heirs, legal representatives, successors and assigns as to management and operation of the property, payment of the 3/8 interest, and contribution to costs and expenses for development and operation and the appointment of the persons named as agents of the owners of the 3/8 working interest."

The above Superior lease was dated January 4, 1928. Shortly thereafter, S. S. Orwig, who was the owner of a considerable undivided interest in said land, on January 17, 1928, conveyed to O. G. Rollins an undivided 1/40 interest in the mineral rights in said land. This conveyance covered not only the 5/8 interest of Superior Oil Corporation, but also the 3/8 interest reserved by the lessor in the earlier lease.

On the same day, January 17, 1928, and immediately after the receipt of said conveyance from Orwig, O. G. Rollins made an oil and gas lease upon his said 1/40 interest to A. E. Graham, which lease was duly recorded on January 20, 1928.

On January 19, 1928, O. G. Rollins, two days after the making of the oil and gas lease to Graham, conveyed by oil and gas deed to one William F. Collins an undivided 1/48 interest in the mineral rights in said land, which was recorded on May 2, 1928. Thereafter, through several mesne conveyances, R. P. Bates, the plaintiff, derived title through Collins and became the owner of a 1/48 interest in the mineral rights in said land, which is the basis for his claim herein.

It appears that the contention of plaintiff is that the entire tract of 120 acres involved in this case was leased to the Superior Oil Corporation by the lease of January 4, 1928, and, therefore, when the lease from O. G. Rollins to Graham was made on January 17, 1928, it was a mere top lease, not to become effective except on the contingency that the lease to Superior Oil Corporation should expire during the term of the five-year lease made to Graham by Rollins, and that as this contingency has not occurred, then the lease to Graham was a nullity. Plaintiffs further contend that as the "Superior lease" covered the entire 120-acre tract in its entirety, he is entitled not only to the customary 1/8 royalty interest, but also to the income derived from the 3/8 working interest.

It would seem that the pivotal question in this case hinges upon a proper construction of the Superior lease of January 4, 1928. Was it a lease of the 120-acre tract in its entirety, thus rendering the subsequent Graham lease a nullity, or was it a lease of a 5/8 interest, and the creation of a mining partnership as to the remaining 3/8? The plaintiff submits a very ingenious and able argument in support of his contention that the entire tract was leased; however, it is our conclusion that such an interpretation of the instrument cannot be sustained.

Construing the lease to the Superior Oil Corporation as a whole, and looking to all parts of the instrument, we are constrained to hold that said agreement between Orwig and the other owners of the title, and the Superior Oil Corporation, constituted a lease of the land to the extent of a 5/8 interest, and that the remaining 3/8 reserved by the lessors created a mining partnership. The doctrine of a mining partnership is well established in this jurisdiction.

In Barrett v. Buchanan, 95 Okla. 262, 213 P. 734, this court made the following statement:

"Where tenants in common co-operate in developing a lease for oil and gas, each agreeing to pay his part of the expenses and to share in the profits or losses, they constitute a 'mining partnership'."

As further authorities upon this point, it is only necessary to refer to Schraeder v. Gormley, 127 Okla. 65, 259 P. 869; McKay v. Kelly, 130 Okla. 62, 264 P. 814, and Ellis v. Lewis, 119 Okla. 201, 249 P. 295.

Under the law of this jurisdiction, any tenant in common has a right to make an oil and gas lease upon his undivided interest in any tract of land, and though he may not lease the entire property, his lessee of an undivided interest takes his place and becomes a tenant in common with the other owners, and may proceed to develop, accounting to the other parties for their respective interests in the proceeds. It appears that the only controversy which might validly arise as to the development of the 3/8 interest was between A. E. Graham and the Superior Oil Corporation, and the record indicates that these parties reached an amicable settlement in that regard. There is no basis for an objection by the plaintiff, as the validity and scope of the subsequent lease to Graham is clearly established, and it follows that the plaintiff took whatever interest he has subject to all the rights of Graham under his prior lease.

In the case of Prairie Oil & Gas Co. v. Allen, 2 F. (2d) 566, the court said:

"In Oklahoma, tenant in common in oil and gas underlying land may not make a valid lease of whole of common property, but may lease his undivided interest therein, and his lessee becomes for time being tenant in common with other owners."

In the case at bar, A. E. Graham stood in precisely the same position as the lessee in the case cited immediately above. He became a tenant in common with the other lessors in the Superior lease, and was entitled to equal rights, including such rights as arose from the 3/8 working interest.

It should be noted in this connection that the deed from Orwig to Rollins and the lease from Rollins to Graham, both of which were dated January 17, 1928, and recorded January 20, 1928, gave preference to Rollins and Graham over any right which can be claimed

by Bates under the conveyance to Collins, and the subsequent conveyance by which Bates acquired title, for it is well established in this jurisdiction that the party holding the deed first to be filed for record is the owner of the land. This principle was enunciated in the leading case of McAllister v. Clark, 91 Okla. 205, 217 P. 178, and has never been disputed or modified. In that case it appeared that deeds were made to two grantees, the subsequent one of whom did not have either actual or constructive knowledge of the first conveyance, and where the second grantee first placed his deed of record, he acquired a right superior to that of the prior grantee. This court in the opinion of that case said:

"The law will declare the party holding the first deed filed for record to be the owner of the land."

In view of the foregoing authorities, which are decisive in this case, it follows that under no circumstances could the plaintiff take anything from his undivided 1/48 interest, other than his 1/8 royalty, which, according to the record, has been paid to him, and about which no dispute has arisen.

We conclude that the master and the trial court were correct in their findings and decree; and that said district court was correct in overruling motion of plaintiff for a new trial. Other assignments of error are urged, in reference to exceptions taken by plaintiff to report of special master, and the admitting of certain evidence. We consider it unnecessary to discuss the same. We have examined the record, and find no merit in such contentions.

Judgment affirmed.

The Supreme Court acknowledges the aid of Attorneys Ed Howell, R. E. Buckles, and C. B. Kidd in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of the law and facts was prepared by Mr. Howell and approved by Mr. Buckles and Mr. Kidd, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, BUSBY, PHELPS, and CORN, JJ., concur. WELCH, J., absent. GIBSON, J., not participating.