ELSEY v. SHAW.

No. 32160.   Dec. 23, 1947.

Rehearing Denied March 2, 1948.

*190 P. 2d 439.*

Ted R. Elliott, of Oklahoma City, for plaintiff in error.

Louis Reilly, of Kingfisher, and I. L. Lockewitz, of Tulsa, for defendant in error.

GIBSON, J. This case involves the question as to which of two oil and gas leases is the superior lease.

On November 1, 1943, Mary A. Friend, owner of a 160-acre tract of land in Kingfisher county, executed and delivered to J. L. Shaw an oil and gas lease thereon for which the consideration of $160 was paid. This lease was not filed for record until November 10, 1943. In the meantime, and on November 5, 1943, Mrs. Friend executed and delivered to H. F. Elsey an oil and gas lease on the same land, the lease being taken in the name of T. A. Elsey, wife of H. F. Elsey. This lease was filed for record the day it was executed. Both leases were for a term of ten years from date and as long thereafter as oil or gas is produced by the lessee. The Elseys did not know of the existence of the Shaw lease at the time the Elsey lease was obtained. H. F. Elsey, as notary public, took the acknowledgment of Mrs. Friend to the Elsey lease. The consideration of $160 for said lease was paid by check, which Mrs. Friend did not cash. On November 10, 1943, Mrs. Friend commenced this action against T. A. Elsey to cancel said lease on the ground of fraud and misrepresentation in its procurement, and in her petition she affirmed the Shaw lease. T. A. Elsey filed an answer in which she asked that Shaw be made a party defendant. Thereupon Shaw was made a party defendant, and he filed an answer asking that Elsey be denied relief for the same reasons stated by Mrs. Friend in her petition.

The evidence established the fact that both Shaw and H. F. Elsey were lease brokers and that each was getting a spread of leases in the neighborhood of the land in question. The evidence did not establish any fraud practiced in obtaining the Elsey lease from Mrs. Friend, as alleged by her and Shaw.

Appellant presents several grounds of error, but we deem it necessary to consider only the one that the judgment is contrary to law.

The issue of law is clearly reflected in the findings and conclusions of the trial court. After holding that both Shaw and Elsey were innocent in contemplation of law, and, further, that Shaw, under the circumstances, was not negligent in withholding his lease from record, the court said:

" . . . but that when the said codefendant Shaw did withhold his lease from record, he did so at his own risk that in the meantime there might appear of record a lease that might take priority under the recording statute, and there is no question in the mind of the court, but that the Elsey lease would be such a lease, if the interest of the Notary Public, H. F. Elsey, does not make such Elsey lease not subject to record; that under the undisputed evidence in the case, and there is no disputed fact and this is solely a question of law, and that H. F. Elsey's interest disqualified him from acting as Notary Public to the acknowledgment of the Elsey lease, and vitiates the acknowledgment, and that such Elsey lease was not entitled to record, that J. L. Shaw, holding the prior lease from the standpoint of the date of execution, but subsequent from the standpoint of the date of recording, may question and attack the acknowledgment of the Elsey lease, without questioning the good faith of the Elseys or without bringing into question any other proposition than the cold-blooded proposition of law, or the disqualification of the officer."

As recognized by the trial court, it is established law in this state that where the equities are equal between two grantees of same grantor, the grantee holding the deed first filed for record takes the title thereunder. McAllister v. Clark, 91 Okla. 205, 217 P. 178; Bates v. Rogers, 178 Okla. 164, 62 P. 2d 481; Kee v. Ewing et al., 17 Okla. 410, 87 P. 297.

Appellant contends that such is the applicable law of this case and that the further holding of the trial court that the effect of filing for record was defeated because of the latent defect in the acknowledgment is error and, among other cases, relies on Kee v. Ewing,

supra, and Ardmore Nat. Bank v. Briggs Machinery & Supply Co., 20 Okla. 427, 94 P. 533. Under authority of these and other cases such latent defect does not defeat the right to record the instrument or the effect of the record as constructive notice of whatever rights that pass thereunder. In the Kee case where, in principle, there was involved the same question as here, the Territorial Court held that the title passing under a recorded instrument bearing an acknowledgment containing a similar latent defect took priority over a previously executed but unrecorded instrument from the same grantor.

Appellee does not question the holding that such recording is notice to subsequent purchasers, but contends it has no proper application to prior purchasers and criticizes the holding in the Kee Case to the contrary. And, on authority of Lankford, State Bank Com'r, v. First National Bank of Lawton, 75 Okla. 159, 183 P. 56 Bauder v. Bauder, 195 Okla. 85, 155 P. 2d 543, and Harney v. Montgomery (Wyo.) 213 P. 378, it is contended that the recording is voidable and thus subject to cancellation independently of an attack on the recorded instrument and that appellee as prior grantee is entitled to make such attack.

To contend that the recording is not valid as to appellee solely because he purchased previously and hence could not be charged with notice at the time of his purchase, is to limit the force of the registry laws to that of imparting notice to subsequent purchasers as declared in 16 O. S. 1941 §16, and thus ignore the effect of the recording, independently of the question of notice, as declared in 16 O. S. 1941 §15. It is said in 45 Am. Jur. 506, §146:

"Registry is the creature of statute. If there were no statute requiring a registry, all persons would be bound, at their peril, to take notice of a conveyance under which possession is taken. But by virtue of the recording acts, an unrecorded deed or other instrument required to be recorded is not valid and effective against a subsequent bona fide purchaser, even though the instrument was not placed on record because it was lost or destroyed."

Our statute (16 O. S. 1941 §15) is as follows:

"Except as hereinafter provided, no acknowledgment or recording shall be necessary to the validity of any deed, mortgage, or contract relating to real estate as between the parties thereto; but no deed, mortgage, contract, bond, lease, or other instrument relating to real estate other than a lease for a period not exceeding one year and accompanied by actual possession, shall be valid as against third persons unless acknowledged and recorded as herein provided."

The Supreme Court of Kansas, construing the Kansas statute which is similar to ours in the case of Smith v. Worster, 59 Kan. 640, 54 P. 676, 677, said:

"Section 21 of the act concerning conveyances of real estate declares 'No such instrument in writing shall be valid, except between the parties thereto and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record.' Gen. St. 1889, par. 1130. This statute therefore prescribes a penalty for the neglect of duty towards others, and lack of diligence to protect one's own interests. That penalty is that the unrecorded conveyance, except as between the parties thereto and those who have actual knowledge thereof, shall be invalid as long as it remains unrecorded. If, then, the deed of plaintiff in error was invalid until recorded, it was as though he had no interest in the land until record was made. If he had no such interest until record was made, his rights dated from the time of record, the same as though they had not been acquired until then."

To the same effect see cases cited under said section 146 of Am. Jur., where it is further declared:

"As to all subsequent purchasers for value, without notice, all deeds or other instruments relating to or affecting title to real property take effect only from and after recording. As to them, an

unregistered deed or mortgage is in all respects as if it did not exist."

Concerning the situation that arises in such cases, we declared in Terrell v. Scott, 129 Okla. 78, 262 P. 1071, as follows:

"The subsequent good faith purchaser doubtlessly is as innocent as the prior mortgagee, but not more so; one must lose because there can be no accommodation of rights in the premises. There is here applicable the maxim 'between equal equities the law will prevail," or its companion, 'between equal equities the first in order of time shall prevail,' according to whether the estate of the mortgagee is legal or equitable."

And, as the rule applicable at law which is the situation here, we declared in McAllister v. Clark, supra, the following:

"The rule of law is that the party holding the deed first to be filed for record is the owner of the land."

In the Kee case was involved the rights of two mortgagees. The Union Trust Company was holder of the mortgage first executed and Kee (plaintiff in error) holder of second mortgage which was recorded first. The issue is reflected in the following statement by the court:

"The mortgage of the plaintiff in error was recorded on the 28th of November, the day following its execution and delivery, and four months prior to the recording of the mortgage to the Union Trust Company, which clearly gave it precedence, if the same was entitled to record at that time. It is urged, however, by the defendant in error, that it was not entitled to record, and did not, because of being recorded, acquire a superior right of enforcement over the mortgage of defendant in error, because of the fact that the National Bank of Weatherford had some interest therein, and O. H. Cafky, cashier of said bank, and stockholder therein, took the acknowledgment of Ewing and wife to its execution."

And after considering authorities to the contrary there is declared:

" 'When a recorded instrument shows on its face that the acknowledgment was taken by a party in interest, it is improperly recorded, and is not constructive notice; but when it is fair upon its face, it is the duty of the register to receive and record it, and its record operates as notice, notwithstanding there may be some hidden defect.' The rule here laid down has special force in this territory at this time, because of the determination of this court in Watts v. First National Bank, 8 Okla. 645, 58 P. 782, in which this court declares the Missouri rule laid down in Stevens v. Hampton, supra, to be the just, reasonable, and correct rule in this class of cases; and, when the same is applied to the facts in this case, it leaves no question but that the plaintiff in error, Kee, under his mortgage of November 27, 1901, had a first lien upon the premises involved, to the extent of such mortgage."

In the Kee case the question turned upon the construction of section 888, Wilson's Rev. and Ann. St. 1903, which is the same as 16 O.S. 1941 §15, quoted, supra. This has application to the invalidity of a prior unrecorded conveyance as against the rights of others generally as distinguished from the effect of a recorded conveyance against the claims of subsequent purchasers as declared in section 15 of the same title. But the controlling fact under either statute is that the instrument was entitled to record notwithstanding the latent defect.

This court has consistently recognized the rule so announced as a correct statement of the law when applied to those who actually purchased subsequently. And in view of the fact the prior purchaser holding under an unrecorded instrument occupies no more favorable status, the attack on the Kee case fails and the contention is without force.

The contention that the voidable character of the registration by reason of such latent defect affords a basis of direct attack thereon independently of an attack on the instrument recorded and that appellee as a prior purchaser is

entitled to make such attack not only accords to the unrecorded lease of the appellee a superior status where the statute (sec. 15, supra) makes it inferior, but is based upon two assumptions. One, that the recording is subject to direct attack independently of attack on the instrument recorded, and, the other, that appellee is in position to make such attack. The three cases relied on support neither contention.

In the Lankford case the holder of second chattel mortgage sought to cancel the priority of first chattel mortgage because of latent defect in the attestation. The court recognized as applicable the rule that obtained as to latent defects in acknowledgments. The court there declared that the recording was not void but voidable. It was held that by reason thereof it was not subject to attack by the second mortgagee but was subject to attack by the mortgagor. No attack by mortgagor was involved, and whether such attack could be made independently of an attack on the instrument recorded was not considered by the court. The emphasis was that the right of attack was in the mortgagor, and until such was made it had the same binding force on others, of which second mortgagee was one, as if said defect did not exist. So far as pertinent here the effect of the holding is that such recording in valid against all who are not parties to the instrument recorded, thus negativing the right of holder of another and unrecorded instrument to assail it.

In the Bauder case the plaintiffs were the heirs of one deceased who appeared as grantor in a quitclaim deed. The action was to cancel the deed upon the ground the signature to the deed was forged and that the grantor never appeared before the notary certifying the acknowledgment. The court held that the evidence was insufficient to prove the signature was forged but did prove that the grantor was not present when the acknowledgment was placed on the deed. The court declared:

"In this case it is doubtful if the acknowledgment was regular. The failure to appear before a notary may destroy the effect of an acknowledgment insofar as the recording of the instrument is concerned, but it does not destroy the effect of the instrument as a conveyance of property.

"It is the general rule that a regular certificate of acknowledgment appearing upon a deed imports veracity to the instrument, and that the deed can then be declared a forgery only upon clear, unequivocal, and convincing testimony. Wolverine Oil Co. v. Parks et al., 79 Okla. 318, 193 P. 624; Winn v. Wilmott, 138 Okla. 177, 280 P. 808; Elliott v. Knappenberger, 177 Okla. 303, 58 P. 2d 1240."

Much stress is placed by appellee upon the following statement contained in the quotation:

"The failure to appear before a notary may destroy the effect of an acknowledgment in so far as the recording of the instrument is concerned, but it does not destroy the effect of the instrument as a conveyance of property."

This statement is relied on as authority for the conclusion that the recording may be attacked independently of an attack on the operative force of the instrument. And on the basis thereof and the holding in the Lankford case that such recording is voidable, the contention is made that the same is subject to attack by appellee. To the extent, if any, the quoted statement may lead to such conclusion, the same is misleading. The question before the court was the probative value of the record of the instrument upon the issue of forgery. There were not involved rights of any one claiming independently of the deed in question and hence the question of the effect of the recording thereon or the right of such others to attack the record was not within the issues. The quoted language implies nothing beyond its literal import which is that while a defective acknowledgment may destroy the recording effect of an instrument, it does not destroy the effect of the instrument as a conveyance if the

same is effective as such independently of such recording.

However, a fact there that is pertinent here is the cancellation of the record there was sought on strength of the alleged forgery of the instrument and on the failure to establish the forgery the court denied the cancellation of the record as well as of the deed. Therein the right to challenge the record was made to depend upon the inoperative force of the instrument as a conveyance. There is nothing in the Bauder case that is counter to the holding in the Lankford case that the recording, though voidable for a latent defect in the acknowledgment, is effective as such until canceled or set aside. Nor is there anything therein to warrant the conclusion that such recording may be assailed independently of an attack on the force or validity of the instrument as a conveyance.

In Harney v. Montgomery, supra, there was executed a mortgage carrying a power of sale. The acknowledgment was taken and certified by payee of the note secured thereby. After default in payment the mortgage was foreclosed by advertisement of sale in due form and the payee who became purchaser thereat executed a lease thereon. Thereafter the mortgagor sued the mortgagees as purchaser asking that the mortgage be canceled of record, that the foreclosure proceedings thereunder and the sheriff's deed issued in pursuance thereof be declared void. The issue turned on the effect of the recording in view of the disqualification of the one taking the acknowledgment, which fact was not reflected of record. The court recognized that by reason of the defect not appearing of record, the mortgage granted by the purchaser was valid but that the purchaser acquired no title through the foreclosure sale. Touching this the court declared:

"No mortgage in this state can lawfully be foreclosed by advertisement under a power of sale contained in the mortgage, unless the mortgage containing such power has been duly recorded. Section 4628, Wyo. C. S. 1920. This has always been the law of this state. And the notice of foreclosure must contain a statement as to when it was recorded. Section 4630. The effect of the provisions of the statute is to annul the force of the power of sale unless the mortgage is recorded . . ."

And referring later to the rule so stated there is said:

"That in fact is the universally recognized rule, and it is a prerequisite to a valid exercise of a power, not only that there must be a record of the mortgage or assignment, but also that it should have been entitled to record, otherwise the record, as between the parties, is a nullity, and the foreclosure proceedings, as between them, unauthorized and void."

A further statement by the court upon which appellee places emphasis is the following:

"An officer acting illegally, as did the defendant Armstrong in this case, should not, generally speaking, at least, be permitted to acquire for himself and his associates, a valuable right through and by virtue of his illegal act. The right of the exercise of a power of sale is a right that is valuable; and to hold that such right could be acquired, as between the parties to the instrument charged with knowledge of the illegal act of the notary, through an unlawful act of that notary, would clearly be repugnant to sound reasoning and contrary to all principles of law. No court, as far as we have been able to find, has so held."

In disposing of said issue there is said:

"The attack against the illegal portion of the mortgage should no doubt be made in a direct proceeding for that purpose. We think the attack herein is direct. Jenkins v. Jonas Schwab Co., 138 Ala. 664, 35 So. 649; Monroe v. Arthur, 126 Ala. 362, 28 So. 476, 85 Am. St. Rep. 36. And we are accordingly constrained to hold that the foreclosure sale made herein, and the sheriff's deed issued pursuant thereto, are, as between the parties hereto, null and void."

The contention of the appellee that the Wyoming case, in permitting the cancellation of the record where the de-

fect in the acknowledgment was latent, is a parallel to the instant case and hence illustrative of the right of appellee to cancel the record herein is without merit. There the operative force of the power of sale was dependent upon a proper acknowledgment. Here, the operative force of the lease between the parties is not dependent upon the acknowledgment. Furthermore, there the one attacking was the mortgagor and the attack was successful only to the extent the acknowledgment and recording were essential to passing of a right purporting to be conveyed by the instrument.

In none of the cases relied on is there any authority for the contention the recording is subject to attack independently of the instrument recorded or that in any such situation one other than a party to the instrument or one whose rights are impaired thereby could make such attack.

The judgment is reversed and the cause remanded, with instructions to enter judgment establishing the validity of the Elsey lease.

RILEY, BAYLESS, WELCH, CORN, and LUTTRELL, JJ., concur. DAVISON, V. C. J., concurs in conclusion. HURST, C.J., dissents.

HURST, C.J. (dissenting). The question for decision is whether an oil and gas lessee, whose lease is properly acknowledged and recorded, may sue to cancel a voidable recordation of a subsequent lease which was placed of record first, and thereby secure priority in right over the subsequent lease. The decision must be based upon a proper construction of our recording statutes, 16 O.S. 1941 §§15, 16:

"Except as hereinafter provided, no acknowledgment or recording shall be necessary to the validity of any deed, mortgage, or contract relating to real estate as between the parties thereto; but no deed, mortgage, contract, bond, lease, or other instrument relating to real estate other than a lease for a period not exceeding one year and accompanied by actual possession, shall be valid as against third persons unless acknowledged and recorded as herein provided." Section 15.

"Every conveyance of real property acknowledged or approved, certified and recorded as prescribed by law from the time it was filed with the register of deeds for record is constructive notice of the contents thereof to subsequent purchasers, mortgagees, encumbrancers or creditors." Section 16.

It is my view that section 16, above, refers to constructive notice to "subsequent" purchasers, mortgagees, encumbrancers or creditors only, and that it has no application here, since Shaw was a prior purchaser, and that the majority opinion is based upon the false premise or fiction that Shaw, a prior purchaser in fact, was in law relegated to the position of a subsequent purchaser. I think Shaw was in law as well as in fact a prior purchaser and a "third" person within the meaning of section 15, above, since the recording of the Elsey lease was voidable as to Shaw and subject to cancellation of record in a direct attack, as here, by him.

The parties cite no case, and I have been able to find none like the present case, where one of two innocent purchasers whose conveyances are both of record has sued to cancel of record the conveyances of the other first of record and to thus be adjudged to have the superior right.

The recording statutes of the various states may be fairly classified as follows: (1) those which authorize the grantee to file his instrument within a certain time and, if the instrument is filed within the time specified, the recording relates back to the execution of the instrument and has priority over instruments made subsequent to execution but before the recording of the same; (2) those which protect a subsequent innocent purchaser for value against a prior unrecorded instrument without the recordation of the second instrument; (3) those which protect the subsequent innocent purchaser against

the prior unrecorded instrument only if the subsequent purchaser has recorded his instrument first. See 32 A.L.R. 345; 66 C.J. 1142-1144; 45 Am. Jur. 502-506.

Our statute, 16 O.S. 1941 §15, is of the third class. Accordingly, we hold that the first instrument of record has priority. Bates v. Rogers, 178 Okla. 164, 62 P. 2d 481. We are also committed to the rule that an instrument acknowledged before an interested notary public, where the interest of the notary public is latent, is entitled to record and the recording operates as notice to subsequent purchasers and encumbrancers, as long as the instrument is of record. Ardmore National Bank v. Briggs M. & S. Co., 20 Okla. 427, 94 P. 533; Lankford v. First National Bank, 75 Okla. 159, 183 P. 56; Harjo v. Collins, 146 Okla. 131, 293 P. 179. And this is the general rule. 19 A.L.R. 1079; 66 C.J. 1155; 1 Am. Jur. 339. However, the recording of such a defectively acknowledged instrument is voidable. Lankford v. First National Bank, above.

The recordation of such a defectively acknowledged instrument may be directly attacked in a suit brought for the purpose of having it canceled of record by a party entitled to bring the suit (Lankford v. First National Bank, above; Harney v. Montgomery, 29 Wyo. 362, 213 P. 378) but it may not be attacked collaterally. 1 Am. Jur. 339; 1 C.J.S. 827; 1 C.J. 803; Monroe v. Arthur, 126 Ala. 362, 28 So. 476, 85 A.S.R. 36. I think Shaw is a proper party to make such a direct attack as he has done in the present case.

The recording statutes of Wyoming are of the third type, above mentioned, and are very similar to ours. In Harney v. Montgomery, above, the court followed the rule stated in Lankford v. First National Bank, above, and held that the mortgagor could cancel of record a mortgage so defectively acknowledged, and used this pertinent language:

"An officer acting illegally, as did the defendant Armstrong in this case, should not, generally speaking, at least, be permitted to acquire for himself and his associates, a valuable right through and by virtue of his illegal act." . . .

"Clearly, as between the parties to the original instrument, charged with knowledge of the illegal act of the notary, the mortgage in controversy should be considered as though it were not acknowledged at all; otherwise, the illegal act would indirectly, through the recording of the instrument, put the power of sale into operation, and thus confer a right on the mortgagees which they otherwise would not possess."

It would seem to logically follow that, if the grantor or mortgagor may make a direct attack upon such an instrument, a prior innocent grantee should be entitled to make such an attack. Where, as in Oklahoma, the conveyance or mortgage is valid between the parties without acknowledgment, and one who purchases subsequent to the recording of such an instrument takes with constructive notice thereof and may not attack it, it would seem that a prior innocent purchaser would be about the only person who could make an effective attack and give meaning to our rule that such a recording is voidable. The majority opinion does not expressly deny the rule that such a recording is voidable, but the effect of the opinion is to prevent its avoidance by the "third" party sought to be protected by section 15.

Our rule that the instrument first recorded is the superior instrument has reference to instruments properly acknowledged and recorded. It has not heretofore been applied to instruments whose recordation is voidable, which are subject to cancellation of record in a direct attack.

The cases of Kee v. Ewing, 17 Okla. 410, 87 P. 297, and Ardmore National Bank v. Briggs M. & S. Co., 20 Okla. 427, 94 P. 533, involved collateral attack, as no attempt was there made to cancel the instruments of record, and they are, therefore, not contrary to the rule, allowing a direct, but not a collateral, attack. The Kansas case cited

in the majority opinion did not involve a contest between the holders of two recorded instruments, as here, but held that the holder of an instrument made before, but recorded after, a suit was filed involving the land took as a pendente lite purchaser.

The majority opinion cites no authority supporting the conclusion that Shaw could not attack the recording of the Elsey lease because of the latent defect in the acknowledgment independent of an attack upon the lease itself. Thus Elsey is permitted to acquire and retain a valuable right by virtue of his illegal act in taking an acknowledgment to his own lease, as against Shaw, whose only error was in following a custom among lease brokers of withholding the filing of his leases until he obtained his block, a custom which the record shows

Elsey followed except as to this and two other leases. Of twenty-one leases he obtained, eighteen were recorded from eight days to two months after they were obtained.

Shaw was entitled to have cancellation of the recording of the Elsey lease, and when canceled he had the only lease of record, and under the recording statutes he has priority.

If, as held in Harney v. Montgomery, above, the holder of such a defectively acknowledged instrument may not retain a valuable right against the grantor by reason of the voidable recording, I see no reason why he should retain such right against an innocent prior purchaser.

For the foregoing reasons, I respectfully dissent.