Howard L. WOODRUFF, II, Rebecca Mae Woodruff, James Edward Woodruff, Margaret Jean Woodruff, and William Scott Woodruff, minors, as Individuals, and by and through Howard L. Woodruff, their Father and Natural Guardian, and Howard L. Woodruff, Individually, Plaintiffs in Error,

v.

Herman C. WOODRUFF, Sr., Defendant In Error.

No. 41302.

Supreme Court of Oklahoma.

July 19, 1966.

Rehearing Denied Sept. 27, 1966.

Goins & Smith, by J. I. Goins, Ardmore, for plaintiffs in error.

Wilson Wallace, Marvin Shilling, Ardmore, for defendant in error.

BLACKBIRD, Justice.

This appeal involves conflicting claims of relatives to the ownership of a farm containing a half section of land (minus a part of the minerals) formerly belonging to their common ancestor, Mrs. Ida Belle Woodruff.

The plaintiff in error, Howard L. Woodruff, is the son of one of the said Mrs. Ida Woodruff's two sons, Leonard, who died several years ago. The other plaintiffs in error are Howard's children, all of whom were his minor wards at the time this action was commenced. Defendant in error, Herman C. Woodruff, is Mrs. Woodruff's other son.

For many years Mrs. Woodruff's home was at 902 "E" Street, in Ardmore. For several years prior to 1954, her said grandson, Howard, together with his wife, Willie Mae Woodruff, and their children, lived with Mrs. Woodruff there, while her son, Herman, otherwise herein referred to as "defendant", lived on his ranch 8 miles northwest of Healdton and some 12 or 15 miles southwest of Tatums, Oklahoma.

On October 21, 1958, the said Herman Woodruff filed for record a quit claim

deed purporting to have been executed by his mother, Ida, before a notary public named "Hiram Mitchell", on August 29, 1946, conveying the subject property, among other lands, to him.

Thereafter, in June, 1959, plaintiffs in error, hereinafter referred to collectively as "plaintiffs", instituted the present action, claiming ownership of the farm, alleging that they and their predecessor in title, Mrs. Ida Belle Woodruff, were, and had been for more than 20 years, in adverse possession of the farm, and further alleging, among other things, that the deed filed by Herman Woodruff was void, champertous, and constituted a cloud upon their title. They prayed that said title be quieted.

In a second amended petition they thereafter filed, plaintiffs asserted, as the basis of their claim of record title to the land, a quit claim deed, dated December 23, 1954, and filed of record January 5, 1955, wherein Ida Belle Woodruff, " * * * was grantor" and they " * * * were grantees * * * ". Plaintiffs alleged that the title vested in them by said deed, was a gift. They also specifically alleged their claim of prescriptive title, and added to their previous allegations of 20 years' adverse possession, additional allegations concerning their payment of taxes and making improvements upon the property. Plaintiffs also alleged, in substance, that on the same day defendant filed his above described quit claim deed for recording, he also filed of record a mineral deed, also dated August 29, 1946, purporting to be a conveyance to him from Ida Belle Woodruff of certain minerals under said land. Plaintiffs further alleged, among other things, that, at the time of the execution and delivery of their deed from Ida Belle Woodruff on December 20, 1954, they knew nothing of the deeds upon which defendant's claim of title was based, and had no notice, either actual or constructive, of his claim until those deeds were recorded. They further alleged that if any such deeds were actually executed and delivered, there was no consideration for them, and they should be cancelled, and defendant precluded from asserting any rights thereunder.

In an answer to plaintiffs' second amended petition, defendant denied plaintiffs' claim of ownership and possession, but admitted Ida Belle Woodruff was in possession of the property, and alleged that said possession was pursuant to an oral agreement, made between her and said defendant at the time she delivered to him the deed of August 29, 1946, that she should have the possession thereof, and the revenue, rents and profits therefrom. Defendant further alleged, among other things, that if plaintiffs in fact had a deed from Mrs. Woodruff, it was executed after she became 88 years of age, and was, by reason of her advanced age and infirmities, easily imposed upon and persuaded to do things of which she had no conscious knowledge; and that such deed, if executed by her, was contrary to her will and desire. Defendant further alleged that such deed, if made, failed to transfer any right, title or interest in the property, because of his prior deed to it.

Mrs. Ida Belle Woodruff died on February 1, 1960, before the case was tried. Thereafter, in a "Response" to an order of the court, plaintiffs obtained, to require defendant to allow them to inspect the originals of his deeds, defendant revealed that he no longer had them, and expressed the belief that they were either lost or stolen. The Response also stated, however, that defendant was attaching to it certified, photographic copies of said deeds.

When the case finally came to trial in May, 1964, plaintiffs introduced evidence consisting principally of the testimony of Mrs. Lucile P. Lacy, a handwriting expert, to show that the grantor's purported signatures on defendant's deeds were forgeries, and elicited testimony from Mrs. Willie Mae Woodruff in an effort to show that Ida Belle Woodruff could not have executed that deed, as defendant's evidence tended to prove. When it was attempted to show by the testimony of the defendant himself, that he gave Mrs. Woodruff, now

deceased, a good and valuable cash consideration for the deed, the trial court sustained the objection plaintiffs made to the elicitation of such testimony, on the ground it violated the so-called "Dead Man's Statute". Defendant then made a tender of such proof.

When defendant was interrogated as to why he had waited so long after its execution, to file the deeds from his mother for record, he testified, in substance, that said filing was postponed so that there would be no legal obstacle to her receiving the income from said property, while she needed it to help defray her living expenses, that were substantial, while her grandson and his family were residing with her.

At the close of the evidence, the trial court entered judgment for the defendant and decreed his title quieted against the claims of plaintiffs, as prayed for in his cross petition.

 Under plaintiffs first proposition for reversal, they first say that Mrs. Lacy's testimony that the signatures on defendant's deeds were not the genuine signatures of Ida Belle Woodruff, was "conclusive". Thereafter, they discuss certain circumstances which they characterize both as "badges of fraud" and as " * * * telltale signs which indicate the truthfulness of the testimony of the witness Lacy." Without entering into a detailed discussion of all of these circumstances to which plaintiffs attach significance, suffice it to say that we have thoroughly considered them, in connection with our careful examination of the entire record and are of the opinion that these circumstances, which plaintiffs attempt to make defendant's obtaining the deeds from his mother appear so strange or unusual, cannot be said, as a matter of law, to have rendered unworthy of belief, defendant's evidence to the contrary. Whether they were sufficiently explained by other evidence, and the reasonable inferences to be drawn therefrom, as to cast no serious doubt upon the veracity of defendant's evidence was purely a matter of weighing the evidence—a function

which, in this jurisdiction, is performed initially in the trial court. The determination there, can only be overturned here, when it is clearly against the weight of the evidence.

 Defendant introduced in evidence the photographic copies of the deeds upon which he based his claim of title to the property. Though the bodies of these instruments were completely typewritten (rather than printed, with blank spaces in the printing being filled in with a typewriter) and the mineral deed looks as if it had at one time been in two pieces, later stapled together, plaintiffs cite no authority precluding them from being entitled to the same presumptions that attach to deeds generally, that are legal on their face and appear to be valid conveyances. These presumptions were supplemented in this case by the positive testimony of the defendant and the above mentioned Notary Public, Hiram Mitchell, that Mrs. Woodruff was the person who signed them at defendant's ranch home, and, later the same day, came to the Notary's home in Tatums and acknowledged said signatures. Though Mrs. Lacy, the handwriting expert, pointed out differences between these purported signatures and certain characteristics of signatures written by Mrs. Woodruff at other times (upon which differences she largely based her conclusion that these deeds were forgeries) the same witness, on cross examination, admitted that a person's signature may vary from time to time. Furthermore, we observe that while Willie Mae Woodruff testified, in substance, that Mrs. Ida Belle Woodruff never left her home, where the witness and the rest of Herman Woodruff's family lived together for approximately 20 years before her death in 1960, this witness admitted, on cross examination, that she (the witness) was not at the Ardmore residence at all times, and by her testimony, left sufficient room for the inference that Mrs. Ida Belle Woodruff had ample opportunities for going to defendant's ranch home during the witness' absence from the Ardmore residence. In view of

the record, defendant's testimony might better bear the appellation of "unrefuted and unchallenged", than Mrs. Willie Mae Woodruff's testimony, to which plaintiffs' counsel apply to it. Of course, as the defendant was an "interested litigant" in the action, his testimony was not binding on the trial court, (see Alexander v. Gee, Okl., 352 P.2d 915) but, on the other hand, we doubt that Mrs. Willie Mae Woodruff, whose husband and children stood to benefit by a favorable judgment in the action, could be correctly termed a purely unbiased witness.

Under their "Proposition Two", plaintiffs seek to establish the superiority of their title, over defendant's, on the basis of the earlier County Clerk's filing date of their deed—in other words, they invoke the "first deed filed of record" rule, citing or quoting from Williams v. McCann, Okl., 385 P.2d 788; State ex rel. Com'rs of Land Office v. Leecraft, Okl., 279 P.2d 323; Elsey v. Shaw, 199 Okl. 698, 190 P.2d 439; Colby v. Hayes, 186 Okl. 283, 97 P.2d 65; Bates v. Rogers, 178 Okl. 164, 62 P.2d 481, and McAllister v. Clark, 91 Okl. 205, 217 P. 178. Plaintiffs' attempted invocation of this rule, however, is conditioned upon the premise that there was no money consideration for defendant's deeds. They argue that there was no allegation, or proof, of such a consideration; and assert: "It must be presumed that if these deeds were valid and genuine, then that they were executed as a gift and without consideration." This argument not only ignores the recitations of a money consideration in the deeds themselves and the $45.00 in federal revenue stamps that appear thereon, but, more academically, it ignores one of the presumptions accompanying deeds that are duly acknowledged, legal in terms, valid on their faces, and purport to convey title. See Jordan v. Jordan, 62 Okl. 171, 173, 162 P. 758, 760. In the recent case of Chapman v. Chapman, Okl., 400 P.2d 831, 837, we said:

"It is elementary that a validly executed deed is presumed to be supported by valuable consideration. The burden of rebutting this presumption rests upon the party asserting invalidity of the instrument. 15 O.S.1961, §§ 114, 115. * * *."

and held:

"1. Where the validity of a deed duly executed and recorded is challenged by suit to cancel same on grounds of non-delivery and lack of consideration, *the inherent presumption* in favor of delivery and *that consideration was given can be rebutted only by clear and positive evidence to the contrary.*" (Emphasis added).

In accord with the foregoing, there was before the trial court, at the time he entered judgment, the question of whether plaintiffs had discharged their burden of countermanding, by clear and positive evidence, the presumption of consideration that accompanied defendant's deeds (there being no direct evidence that they were not validly executed and delivered). That court determined this issue in the negative, with the result that plaintiffs, in this appeal, now have a double burden similar to the one referred to in the Alexander Case, supra (352 P.2d p. 920) and described in Gaines v. Gaines, 207 Okl. 619, 251 P.2d 1044, 1047, cited therein.

We must reject, as ineffective, plaintiffs' arguments under their Proposition II, as well as their statements, repeated under their Proposition III, that: (1) There was no legal consideration for defendant's deeds from Ida Belle Woodruff, and (2) "The testimony of the expert witness, Lucile P. Lacy, was uncontradicted." We must also reject plaintiffs' inference that said deeds were not "actually executed" by Ida Belle Woodruff. Furthermore, the evidence, as a whole, contradicts plaintiffs' contention that they exercised dominion over, and "the right of ownership" in, the property during a long period of years, and does not support their inference that the plaintiff, Howard L. Woodruff, II, paid the taxes on it for all of those years.

As we have concluded that the trial court's judgment is neither contrary to law, nor clearly against the weight of the evidence, it is hereby affirmed.

HALLEY, C. J., and DAVISON, WILLIAMS, BERRY, HODGES and LAVENDER, JJ., concur.

JACKSON, V. C. J., and IRWIN, J., concur in result.