OSCN Found Document:BUTTERFIELD v. TRUSTEE OF MCCOY REVOCABLE LIVING TRUST

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 BUTTERFIELD v. TRUSTEE OF MCCOY REVOCABLE LIVING TRUST
2024 OK CIV APP 2
Case Number: 121212
Decided: 12/08/2023
Mandate Issued: 01/04/2024
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III

Cite as: 2024 OK CIV APP 2, __ P.3d __

 

C.R. BUTTERFIELD, Plaintiff/Appellant,
v.
TRUSTEE(S) of the JOHNNY B. McCOY REVOCABLE LIVING TRUST, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
DELAWARE COUNTY, OKLAHOMA

HONORABLE BARRY V. DENNEY, JUDGE

AFFIRMED

Thomas J. McGeady, LOGAN & LOWRY, LLP, Vinita, Oklahoma, for Plaintiff/Appellant,

Tommy R. Dyer, Clayton M. Baker, DAVIS and THOMPSON, PLLC, Jay, Oklahoma, for Defendant/Appellee.

Bay Mitchell, Chief Judge:

¶1 This appeal involves competing motions for summary judgment to quiet title to real property located in Delaware County based on conflicting claims of ownership. Plaintiff/Appellant C.R. Butterfield (Butterfield) claims he has superior title based on his possession of the property. Defendant/Appellee the Johnny B. McCoy Revocable Living Trust (McCoy Trust) claims it has superior title because it was first to file a deed in the land records. After de novo review, we hold the McCoy Trust has superior title and affirm the trial court's order granting the McCoy Trust's motion for summary judgment, denying Butterfield's motion for summary judgment, and quieting title in the name of the McCoy Trust.

¶2 In October, 2018, Butterfield began residing on real property owned by Nita Carter (Carter) in Delaware County.[1] On November 17, 2018, Butterfield moved a 12 x 36 foot "cabin" and a storage building onto the property. On January 2, 2019, Carter and Butterfield entered into a contract for deed for Butterfield to purchase the property for $5,000 paid in monthly installments of $200. Butterfield obtained electric and water service, improved the property by adding buildings, and resided continuously on the property.

¶3 On October 19, 2020, the property owner Carter and her husband executed a warranty deed for the same piece of real property, and additional lots, in favor of the McCoy Trust. On October 22, 2020, the McCoy Trust recorded the warranty deed in the land records of Delaware County in Book 2347, Page 532. The McCoy Trust was not advised by Butterfield, Carter, or the title company of Butterfield's prior claim to the property, and the McCoy Trust denies that Butterfield's buildings provided notice of his possession as other buildings, similar in appearance to Butterfield's, were left abandoned on the property.

¶4 On October 29, 2020, Butterfield recorded his contract for deed in the land records of Delaware County in Book 2348, Page 725. On January 19, 2021, Carter executed a warranty deed in favor of Butterfield acknowledging receipt of all payments under the contract for deed. Butterfield did not record the warranty deed.

¶5 On September 14, 2021, Butterfield filed this action against the McCoy Trust to quiet title to the property. On October 15, 2021, the McCoy Trust answered and filed a counterclaim. Butterfield filed a motion for summary judgment arguing he has superior title as his possession of the property was open, notorious, and continuing at the time the McCoy Trust recorded its deed, and his possession created a presumption he owns the property. The McCoy Trust filed a responsive motion and a counter motion for summary judgment arguing it has superior title to the property because it was first in time to file a deed. The trial court granted relief on both motions in favor of, and quieting title in, the McCoy Trust. It is from this order, Butterfield appeals.

¶6 On appeal, we review orders granting and denying summary judgment de novo giving no deference to the trial court. Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶11, 160 P.3d 959, 963. Summary judgment is appropriate where the record establishes no genuine issue of material fact, and the prevailing party is entitled to judgment as a matter of law. Brown v. Alliance Real Estate Group, 1999 OK 7, ¶7, 976 P.2d 1043, 1045. Under de novo review, "we have plenary, independent and nondeferential authority to determine whether the trial court erred in its legal ruling." Fanning v. Brown, 2004 OK 7, ¶8, 85 P.3d 841, 845 (citation omitted).

¶7 In his motion for summary judgment and supportive pleadings, Butterfield relies heavily on the 1922 Oklahoma Supreme Court case of Foley v. Brown, 1922 OK 17, 204 P. 267 for the proposition that his title is superior to the McCoy Trust's title because his possession created a presumption he was the owner of the property. Butterfield builds his case on the following language from Foley:

[A] purchaser of real estate is charged with notice of the rights of persons in actual possession thereof. Brown v. Trent, 36 Okl. 239, 128 Pac. 895. The possession of real estate carries with it the presumption of ownership, and it is the duty of a person purchasing such property from one not in possession to ascertain the extent of the claims of those in possession, as the open actual possession of such property gives notice to the world of just such interest as the possessor has therein. Adams v. White, 40 Okl. 535, 139 Pac. 514; Shaffer v. Turner, 43 Okl. 744, 144 Pac. 366; Wolverine Oil Co. v. Parks, 79 Okl. 318, 193 Pac. 624. So if Brown was in actual possession of the land in question at the time of the execution and delivery of the deed to Foley by Stuart, Foley was charged with notice of the rights of Brown therein.

Foley, 1922 OK 17, ¶3, 204 P. at 268.

¶8 In Foley, plaintiff Henry Brown received good title through a string of valid deeds originating from the allottee in McIntosh County. Brown's possession of the property was immediate and continuous.

¶9 Three years later, the District Court of Hughes County entered a judgment in favor of I.O. Stuart and against Della Grayson. To satisfy the judgment against Grayson, the court quieted title to Brown's property in favor of Stuart notwithstanding that Grayson did not have title to the property.

¶10 Stuart began negotiating the sale of the property with defendant C.E. Foley. Brown's attorney explained the situation in detail to Foley advising him that Brown was the owner of the property through possession under an unbroken chain of title from the allottee, the property was involved in litigation stemming from the Hughes County judgment, and it would be necessary for Foley to institute a lawsuit against Brown if he purchased the property. With this information, Foley purchased the property from Stuart.

¶11 The next month, the court in Hughes County, realizing it quieted title to Brown's property to satisfy the judgment of an unrelated third party, vacated its judgment. Foley then brought a lawsuit against Brown to quiet title. The court entered judgment in favor of Brown, and on appeal, the Oklahoma Supreme Court affirmed.

¶12 In its analysis, the Supreme Court included the language cited by Butterfield regarding possession. However, Butterfield stopped short of citing the next sentence that established title was quieted in Brown -- not because he was in possession of the property -- but because Brown had an unbroken chain of title from the allottee, and Foley received actual notice of this fact from Brown's attorney prior to purchasing the property. The Court concluded Foley could not have valid title because his conveyance came from Stuart who did not have valid title to convey.

¶13 The holding in Foley is based on Brown's continuous, unbroken chain of title to the property and Foley's actual notice of the same. While Brown's possession of the property created a presumption he owned it, he prevailed not because of that presumption, but because he had valid title to the property.

¶14 Butterfield further argues the holding of Foley, that possession carries with it the presumption of ownership, was codified in 16 O.S. 2021 §62(a) and (b). Part (a) of §62 protects bona fide purchasers for value against adverse claims based on conveyances executed by incompetent persons, officers of corporations without proper authority, attorneys in fact whose powers have terminated, and conveyances that were never delivered. Part (b) of §62 protects bona fide purchasers for value when conveyances are from individuals purporting to be guardians, executors, and administrators. Section 62 does not apply to the facts of this case.[2]

¶15 Butterfield's argument that he has superior title to the property because possession carries with it the presumption of ownership is unsupported by the law. In each of the cases cited by Butterfield, along with additional cases and statues reviewed by this court, possession was not the dispositive factor in determining title to property. Therefore, the proposition that possession carries with it the presumption of ownership does not necessarily mean the possessor has title to the property.

¶16 To understand the meaning of the phrase possession carries with it the presumption of ownership, the definition of "presumption" is informative. A presumption is "[s]omething that is thought to be true because it is highly probable." PRESUMPTION, Black's Law Dictionary (11th ed. 2019).

¶17 The presumption of ownership based on possession gives rise to speculation, a hypothesis or conjecture, that the possessor has an ownership interest in the property. It provides notice of a potential legal interest, however, it does not bestow title or create an interest that does not otherwise exist. Possession provides notice of only such legal or equitable interests in the property as the possessor actually has therein. Henslee v. Herring, 1965 OK 49, ¶¶13-14, 403 P.2d 511, 513 ("No matter how open and arresting his holding may be, if he has no legal claim, the purchaser is in no wise affected.")(citation omitted).

¶18 Butterfield argues his possession served to put the McCoy Trust on notice of his claim. The McCoy Trust states it was unaware of Butterfield's possession, yet it was charged with knowledge of everything to which an inquiry might have led. See Singer-Fleischaker Royalty Co. v. Whisenhunt, 1964 OK 268, ¶46, 402 P.2d 886, 893. Whether Butterfield's possession was sufficient to put the McCoy Trust on notice of his claim is material only to the extent Butterfield actually has a legal interest in the property because possession does not create a legal interest. Butterfield's possession serves only to provide notice of such interest as he actually has.

¶19 Accordingly, the dispositive issues in this case are whether Butterfield has a legal interest in the property, and assuming he has an interest, whether that interest is superior to the McCoy Trust's interest.

¶20 To determine Butterfield's legal interest we look to the terms of his agreement with Carter. Butterfield entered into a contract for deed to purchase the property from Carter. A contract for deed made for the sale of real property that allows for immediate possession of the property is deemed to be a mortgage. 16 O.S. 2021 §11A. "[A] mortgage is a security instrument in the nature of a contract." Bank of Wichitas v. Ledford, 2006 OK 73, ¶20, 151 P.3d 103, 111. To interpret a contract, we look to the language of the contract. 15 O.S. 2021 §154.

¶21 Butterfield and Carter's contract for deed states Carter "hereby agrees to sell" and Butterfield "hereby agrees to buy" the property under the express terms of the contract. In a contract for deed, the words "hereby agrees to sell and convey" have different legal implications than the words "has this day sold" because the former is a commitment to sell and convey in the future, while the latter is a present commitment to sell and a future commitment to convey. Parks v. Classen Co., 1932 OK 157, ¶¶18-20, 9 P.2d 432, 434. Here, Carter agreed to sell the property to Butterfield in the future once Butterfield fulfilled his commitment by making all payments under the contract.

¶22 In Oklahoma, a contract to convey at a future time -- once the purchaser performs certain acts -- does not transfer any title until the purchaser performs all acts necessary to entitle him to a deed. Bartlesville Oil & Imp. Co. v. Hill, 1911 OK 492, ¶12, 121 P. 208, 211. Once all acts required under the contract are complete, equitable title transfers to the purchaser. Stanley v. Velma A. Barnes Real Est., Inc., 1977 OK CIV APP 37, ¶14, 571 P.2d 871, 874. Equitable title "indicates a beneficial interest in property and that gives the holder the right to acquire formal legal title." TITLE, Black's Law Dictionary (11th ed. 2019).

¶23 In this case, under the terms of Carter and Butterfield's contract for deed, Butterfield could not acquire any title to the property prior to making all payments under the contract in January of 2021.

¶24 The final question is whether the McCoy Trust has a superior interest in the property. The McCoy Trust, unaware of any prior claim to the property by Butterfield, obtained its interest in the property when it filed its deed on October 22, 2020. A week later on October 29, 2020, Butterfield filed his contract for deed. In January of 2021, Butterfield made the last payment under the contract, and on January 19, 2021, Carter executed a deed in favor of Butterfield which was never filed of record. Consequently, Butterfield -- who had not yet performed all obligations under the contract at the time the McCoy Trust obtained its interest through filing its deed of record -- had no equitable or legal interest in the property when the McCoy Trust obtained its interest.

¶25 Where the equities are equal between two grantees of the same grantor, title belongs to the first to file a deed of record. Elsey v. Shaw, 1947 OK 387, ¶6, 190 P.2d 439, 440.

[W]here two deeds had been issued covering the same tract of land to different grantees and that the first grantee had not placed his deed of record and the second grantee had searched the record and found no record of the filing of the first deed and thereupon filed his deed, the law will declare the party holding the first deed filed for record to be the owner of the land.

Williams v. McCann, 1963 OK 204, ¶5, 385 P.2d 788, 789 (quoting McAllister v. Clark, 1923 OK 343, 217 P. 178).

¶26 The equities between Butterfield and the McCoy Trust were equal at the time the McCoy Trust filed its deed so title was vested in the McCoy Trust. Several months later, Butterfield made the last payment to Carter under the contact for deed. However, Butterfield could obtain no interest from Carter because she had already conveyed all her interest to the McCoy Trust and had nothing further to convey to him.[3]

¶27 The law is clear, possession of real property does not confer title to the possessor. Title belongs to the first to file of record, as an unrecorded deed, mortgage, or contract relating to real estate is not valid against a third party. See 16 O.S. 2021 §15. The trial court correctly held the McCoy Trust as a bona-fide purchaser for value held title under its prior recorded deed.

¶28 The order of the trial court granting the McCoy Trust's motion for summary judgment, denying Butterfield's motion for summary judgment, and quieting title in favor of the McCoy Trust is hereby AFFIRMED.

PRINCE, P.J., and BELL, J., concur.

FOOTNOTES

[1] The real property is described as Lots 3, 4, and 5 in Block P, Unit 3, in Sunnywood Estates, a subdivision of Delaware County, Oklahoma, in Section 17, Township 23N, Range 22E.

[2] In his motion for rehearing, Butterfield further cites to a title insurance commitment issued for an unrelated property and title opinions from 1985 and 2010. Like §62, these sources are not controlling law in this case.

[3] It is unclear why Carter was not a party in this case.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
1977 OK CIV APP 37, 571 P.2d 871, 
STANLEY v. VELMA A. BARNES REAL ESTATE, INC.
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1913 OK 609, 139 P. 514, 40 Okla. 535, 
ADAMS v. WHITE
Discussed

 
1914 OK 565, 144 P. 366, 43 Okla. 744, 
SHAFFER v. TURNER.
Discussed

 
1947 OK 387, 190 P.2d 439, 199 Okla. 698, 
ELSEY v. SHAW
Discussed

 
1919 OK 316, 193 P. 624, 79 Okla. 318, 
WOLVERINE OIL CO. v. PARKS et al.
Discussed

 
1932 OK 157, 9 P.2d 432, 156 Okla. 43, 
PARKS v. CLASSEN CO.
Discussed

 
1922 OK 17, 204 P. 267, 85 Okla. 1, 
FOLEY v. BROWN
Discussed at Length

 
1963 OK 204, 385 P.2d 788, 
WILLIAMS v. McCANN
Discussed

 
1964 OK 268, 402 P.2d 886, 
SINGER-FLEISCHAKER ROYALTY CO. v. WHISENHUNT
Discussed

 
1965 OK 49, 403 P.2d 511, 
HENSLEE v. HERRING
Discussed

 
1923 OK 343, 217 P. 178, 91 Okla. 205, 
McALLISTER v. CLARK
Discussed

 
2004 OK 7, 85 P.3d 841, 
FANNING v. BROWN
Discussed

 
2006 OK 73, 151 P.3d 103, 
BANK OF THE WICHITAS v. LEDFORD
Discussed

 
2007 OK 38, 160 P.3d 959, 
LOWERY v. ECHOSTAR SATELLITE CORP.
Discussed

 
1999 OK 7, 976 P.2d 1043, 70 OBJ 530, 
Brown v. Alliance Real Estate Group
Discussed

 
1911 OK 492, 121 P. 208, 30 Okla. 829, 
BARTLESVILLE OIL & IMPROVEMENT CO. v. HILL.
Discussed

 
1912 OK 749, 128 P. 895, 36 Okla. 239, 
BROWN v. TRENT
Discussed

Title 15. Contracts

 
Cite
Name
Level

 
15 O.S. 154, 
Language of Contract Governs
Cited

Title 16. Conveyances

 
Cite
Name
Level

 
16 O.S. 11A, 
Constructive Mortgage
Cited

 
16 O.S. 15, 
Necessity of Acknowledgment and Recording as to Validity - Acknowledge and Record as Condition for Judgment Lien to be Binding against Third Persons
Cited

 
16 O.S. 62, 
Purchasers for Value of Real Estate - Reliance upon Status of Title as Reflected by County Records and by Decrees and Judgements of Courts
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA